## Dexter and another *vs.* Adams, sheriff &c.

If a creditor at whose suit one is committed to jail, by artifice or fraud induce him to escape, the sheriff is not responsible.

The principle is the same if another who is agent for the creditor for the purpose of commencing a suit in the event of an escape, for the benefit of the creditor but without his knowledge, procure an escape by a fraudulent device practised upon the prisoner, and the creditor seek to avail himself of it by prosecuting an action founded on the escape so procured.

So if the fraud be practised by one acting in concert with such agent.

The prosecuting of the action against the sheriff in such a case is a ratification of the fraudulent acts done under the assumed agency.

Accordingly where the owner of a judgment rendered for a tort had caused the defendant to be committed to the liberties of the jail on a *ca. sa.*, and then pro-cured a capias against the sheriff to be placed in the hands of an agent with in-structions if the prisoner should be off the limits to hand it to a messenger to take to the coroner and go with him and see it delivered, which was accord-ingly done, the prisoner at the moment of the delivery to the messenger having stepped beyond the limits in consequence of a fraudulent representation made to him by the person acting as a messenger—and there was evidence tending to show that the creditor's agent and the messenger were acting in concert: *Held,* that the jury should have been advised that if the agent was a party to the fraud-ulent device, the plaintiff could not recover.

Debt against the defendant as sheriff of Albany county for the escape of one John F. Jenkins from the jail limits, tried at the Albany circuit in April, 1844, before Parker, C. Judge. Jenkins was committed to jail June 4, 1842, on a *ca. sa.* issued upon a judgment in favor of the plaintiff against him, rendered in the mayor's court in an action for a tort. The escape was alleged to have taken place on the 4th day of August, 1842, just before seven o'clock in the morning, and it consisted in the prisoner's stepping across the steamboat Columbia upon the boat Albany, which lay in the Hudson river, the Columbia lying between her and the pier. The eastern boundary of the jail liberties is a line running thirty feet east of the pier. Jenkins returned in a few minutes, but the plaintiff insists that this suit was duly commenced against the sheriff while he was thus absent from the liberties. W. J. Hadley, who at the time of the alleged escape was the assignee and owner of the judgment upon

Dexter *v.* Adams.

which the *ca. sa.* issued, and who is an attorney at law, about the first of August, 1842, issued the capias by which this suit was commenced, and delivered it to one Baker with instructions that if he should see Jenkins off the limits, to deliver the writ to a messenger and instruct him to deliver it to Mr. Allen, the coroner; and the evidence tended to show that he told Baker to go with the messenger and see it so delivered. It appeared that another capias against the sheriff, issued by Hadley, was at the same time in the hands of another agent with similar instructions. The fact of Jenkins having stepped upon the steamboat Albany at the time above mentioned was then proved, and it was shown that while he was there Baker gave the *capias* to C. Mink and told him to deliver it to the coroner. They went together and Mink handed it to the coroner after seven o'clock. On the part of the defendant it was shown that Mink, between six and seven o'clock that morning, sent a message to Jenkins informing him that Mr. E. C. Delavan, for whom Jenkins was agent at Albany, was on board the steamboat Albany which was to leave for New-York at seven o'clock, and wished to see him, Jenkins; which message was delivered at the door of Jenkins' house, who in consequence of it went upon the boat as above mentioned, and found that Delavan was not there. The defendant offered to prove that Mink the next day admitted to the person by whom he sent the message, that it was false and was intended to get Jenkins off the limits, and exulted in the success of his plan. The plaintiff's counsel objecting, the judge excluded the evidence, and the defendant's counsel excepted. The defendant then proved by other testimony that Mr. Delavan was not in Albany on the 4th of August, but was at his residence in Ballston. After the *capias* was delivered to the coroner, Mink and Baker went to Hadley's and told him that it had been so delivered. It was also shown on the part of the defendant that soon after Jenkins was committed, and in June preceding the alleged escape, Mink wrote a note, signing it with another name, asking Jenkins to call that evening at 7 o'clock at Mr. G. V. S. Bleecker's (whose residence was off the limits,) and delivered it at the door of Jenkins' house; and the evidence tended to show

that Hadley and Mink, at the hour indicated, were at a store opposite Mr. Bleecker's watching, but Jenkins did not go there. Hadley, who had parted with his interest, was examined as a witness for the plaintiff, and testified that he had never requested Baker or Mink to make an effort to get Jenkins off the limits. It appeared that Baker and Mink measured the width of the Columbia the evening before the alleged escape to ascertain how far thirty feet east of the pier would extend. Baker was not called.

The defendant's counsel requested the judge to charge the jury, among other things, 1st, that the delivery of the *capias* to Mink was not, under the circumstances of the case, a commencement of the suit, inasmuch as Baker accompanied him to the coroner, and being the agent of the plaintiff in interest had power at any time to recall the *capias* and prevent its delivery, and that if Jenkins returned to the limits before it was delivered to the coroner, the defendant was entitled to the verdict; 2d, that if Jenkins was by any one fraudulently induced to leave the limits in order to charge the sheriff with the debt, the plaintiff by commencing this suit adopted the fraudulent act, and therefore could not recover; 3d, that if Jenkins was induced to leave the limits by the fraud of the agent of the owner of the judgment, or of any one employed by such agent, although such owner did not authorize or assent to, and was not personally aware of such fraud; yet bringing the suit was in law an adoption of the fraudulent contrivance and prevented the plaintiff from recovering; and 4th, that if Baker had knowledge of the fraud it was the same thing as though Hadley, for whom he was agent, knew it. The judge charged the jury that it was for them to say whether Baker retained any control over the *capias* after delivering it to Mink, and if he did, the suit was not commenced until it was delivered to the coroner; and he declined to charge affirmatively as to either of the foregoing propositions. The defendant's counsel excepted to the instruction given, and to the refusal to charge as requested. The jury found a verdict for the plaintiff. The defendant moves for a new trial on a bill of exceptions:

Dexter *v.* Adams.

*N. Hil. Jr. & S. Stevens,* for the defendant. 1. Jenkins was induced to go off the limits by a gross fraud, which the plaintiff by bringing this action has adopted. He cannot therefore recover. (*Sweet* v. *Palmer,* 16 *John.* 181 ; *Van Wormer* v. *Van Voast,* 10 *Wend.* 356.) 2. The plaintiff is chargeable with knowledge of the fraudulent device by which the escape was brought about. The knowledge of the agent is the knowledge of the principal. (*Bank of the U. S.* v. *Davis,* 2 *Hill,* 451.) Where one adopts a part of what his agent has done, he is held to have adopted the whole. (*Paley on Agency,* 172 ; *Corning* v. *Southland,* 3 *Hill,* 552; *Moss* v. *The Rossie Lead Mining Co.,* 5 *id.* 137 ; *Sandford* v. *Handy,* 23 *Wend.* 268; *Story on Agency,* 245, § 250 ; *id.* § 452.) Where one commits a trespass for the benefit of another and that other accepts the goods taken by the trespass, he is a trespasser by adoption. (*Broom's Legal Maxims,* 383, 4.) 3. The suit was not commenced until the delivery of the capias to the coroner. When the capias is delivered to a messenger to take to the officer, the intention to have it delivered must be absolute. (*Visscher* v. *Gansevoort,* 18 *John.* 496 ; *Ross* v. *Luther,* 4 *Cowen,* 158.)

*H. G. Wheaton & R. W. Peckham,* for the plaintiff. If the escape is without the assent of the party at whose suit the prisoner is committed, the sheriff is liable. (2 *R. S.* 437, § 63.) The only excuse which will avail the sheriff is the act of God, or the public enemy. (*Alsept* v. *Eyles,* 2 *H. Black.* 108; *Cargill* v. *Taylor,* 10 *Mass.* 206.) Mink, who was a stranger to the controversy, alone practised the deception. This does not affect the plaintiff. Even the assent of the plaintiff's attorney to an escape will not protect the sheriff. (*Kellogg* v. *Gilbert,* 10 *John.* 220 ; *Jackson* v. *Bartlett,* 8 *id.* 361; *Crary* v. *Turner,* 6 *id.* 51.)

*By the Court,* BEARDSLEY, J. Passing by all other questions which arise in this case, I think it should have been put to the jury to determine whether Jenkins had been induced, by trick and fraud on the part of Baker alone, or in conjunction with Mink, to leave the limits, the trick and fraud having been

resorted to for the benefit of Hadley, who owned the judgment; and with instruction to the jury, that if such were found to be the facts the plaintiffs could not recover. In substance the judge was requested so to charge the jury, and it seems to me he erred in withholding the instruction. Although there was no direct evidence on the point, there were facts and circumstances upon which the jury might well have come to that conclusion.

Baker was the agent of Hadley to commence an action against the sheriff, if Jenkins should be seen off the limits. This was the character of his agency and the extent of his power. But the evidence contained in the bill of exceptions, affords strong ground to believe that he did much more than this agency required or authorized, and that he and Mink were acting in hearty concert in the base fraud by which Jenkins was decoyed beyond the limits. Whatever Baker and Mink did was plainly enough designed to benefit Hadley. No other motive is suggested, and the object palpably was to create a cause of action against the sheriff by which Hadley might collect his debt. If Jenkins was thus entrapped into an act which, under other circumstances, might constitute a ground of action against the sheriff, such ought not to be its effect as to Hadley, if the fraud had been perpetrated for his benefit. If he sets up as constituting a ground of action in his favor, a departure from the limits which had been fraudulently induced and procured for his benefit, he must submit to all the legal consequences which follow from this, his own voluntary act. And he cannot be allowed to separate the fact of passing beyond the limits from the cause which induced it, and rely upon the escape as an efficient ground of action in his behalf, while at the same time he repudiates the fraud by which the escape was procured. He must repudiate both or neither; he cannot reject one while he virtually affirms the other. If the escape was brought about by those who were acting to aid him and for his supposed benefit, and he now seeks to gain an advantage by this result of their efforts in his behalf, he necessarily thereby becomes a party to what they had done. As to others this escape might give a good right of action against the sheriff; but not so as to him for whom the fraud was com-

Dexter *v.* Adams.

mitted.   I am not aware of any exception to the principle, that one who endeavors to turn to his own advantage, what others nad assumed to do for his benefit, although without authority, s, as to such act, deemed to stand in their place ; and if what the assumed agents had done, was fraudulent as to themselves, it is equally so as to him who thus adopts and assumes it.   It is too plain to admit of question, that if Hadley, by artifice and trick, had induced Jenkins to quit the limits, the sheriff would not be responsible for the escape ; and in principle the case is the same, where Hadley seeks to avail himself of the result of artifices and tricks which others had resorted to for his benefit.   If in this case, then, there was evidence on which the jury should have found that the escape was caused by the fraud of Baker and Mink, while acting with a view to aid Hadley, the prosecution of this suit is an unqualified and absolute ratification of their fraudulent acts, and as to Hadley, here was in law no escape from the limits for which he can have redress.   In effect he procured it, and therefore the action will not lie.   There should be a new trial.

New trial granted.