Davies, J.
 

 The statutes of this State prohibit any person from taking or receiving for the loan of money more than seven per cent per annum. They also provide that any person who shall pay or deliver in money, goods, &c., on such loan, any greater sum than is thus allowed, may recover in an action against the person who shall have taken or received the same,
 
 *221
 
 the excess of interest so paid. It is also provided that any person who shall receive any greater interest, discount or consideration than is prescribed, shall be deeméd guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both. (1 R. S., 772, &c., §§ 2, 3, 15.) And by section 5, all notes, &c., taken on such usurious loans are declared void. In the present case it is not alleged or pre tended that the plaintiff has personally taken or received any illegal interest on the loan made to the defendants, or that she had any knowledge, until the trial of this cause, of the secret arrangement made by Mills, the agent of Baldwin the borrower, with Williams her attorney and agent, whereby the latter received a douceur for his private and exclusive benefit. The plaintiff, a non-resident of the State, sends her money here to" invest, according to the laws of this State. All the authority given to Williams as her agent and attorney, to transact the business, of his principal must, in the absence of any counter proof, be construed to transact it according to the laws of the place where it was to be exercised. The law will never presume that parties intend to violate its precepts.
 
 (Owings
 
 v.
 
 Hull,
 
 9 Peters, 607.)
 

 It is the essence of an usurious transaction, that there shall be an unlawful and corrupt intent, on the part of the lender, to take illegal interest, and so wé must find before we can pronounce the transaction to be usurious.
 
 (Nourse
 
 v.
 
 Prime,
 
 7 John. Ch. Rep., 77.) In
 
 Bank of United States
 
 v.
 
 Waggener et al.
 
 (9 Peters, 399), Stoby, Justice, in delivering the opinion of the court, says, that to constitute usury within the prohibitions of the law there must be an intention knowingly to contract for or take usurious interest; for if neither party intend it, but act
 
 Iona fide
 
 and innocently, the law will not infer a corrupt agreement. When, indeed, the contract upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent,
 
 res ipso loquitur.
 
 But when the contract on its face is for legal interest only, then it must be proved that there was some corrupt agreement, or device or shift to cover usury,
 
 *222
 
 and that it was in the full contemplation of the parties. In support of these propositions numerous authorities are cited. In this case there is nothing on the face of the contract, reserving more than legal interest. The real parties to the transaction are the plaintiff and the defendants; and to render the transaction usurious, there must have been a corrupt agreement, an
 
 aggregatio mentium.
 
 It is not sufficient that the defendants intended to make it usurious, so that when called on to return the money- thus obtained by a fraudulent device, they could pay it by availing themselves of the proeetion of the statute. The inténtion to take the' usury, must have been in the full contemplation of the parties, ,_jaot of one party but of both, to the transaction. How we have seen that the plaintiff never intended to violate the law; never authorized any such violation, and never knew or had any intimation that her agent or att&rney had violated it. Can it be truly said, that the plaintiff has ever made the usurious agreement, which it is essential to find was made by her before we can sustain the defence in this cause? It is not pretended she made it herself, but it is said it was made by her agent and therefore it is her agreement, and she must suffer the consequences of his acts. -This is upon the trite maxim,
 
 qui facit per almm, facit pe¡' se.
 
 The authority given to the agent was, as has been shown, to loan her money at legal interest and according to the laws of this State. But the agent, instead of adhering to his instructions, at the solicitation of the defendant Baldwin’s agent, departs from these instructions and violates the law. Is this the act of the principal, by which she can be bound? .
 

 If a master command his: servant to do what is lawful and he do an unlawful act, the. master shall not answer, but the servant for his own.misbehavor; otherwise it. would be in the power of every servant to subject his master to what actions or penalties he pleased. (Bac. Ab.,
 
 title
 
 Mast. & Serv. [L].) In
 
 Middleton
 
 v.
 
 Fowler
 
 (1 Salk., 282), Holt, Ch. J., places the law .upon.its proper foundation, when he states it as a general position, that-no master is chargeable with the act of his servant, hut
 
 *223
 
 when he acts in the execution of the authority given him. In other words, when a servant quits sight of the object for which he was employed, and without reference to his master’s business or orders, commits from his own malice some willful and independent act, he is no longer presumed to be acting in pursuance of his general authority as a servant, and his master is not responsible for the act which he does. The rule that when an agent commits a wrong in the transaction of the business of his principal, the principal is liable for the injury produced by such wrong, has no application to the present case. That rule cannot apply where the agent when committing the wrong is bargaining on his own account, for his own private advantage exclusively, and this is known to the person with whom he is bargaining. It could only apply where the person dealt- with is deceived or wronged, which in no sense is the present case. Baldwin’s agent was not misled or deceived by any act of the plaintiff’s agent. He well knew that in reference to the $25, Williams was acting and contracting on his own behalf and for his own benefit exclusively. He did not assume in that matter to act for or represent the plaintiff, or that what he was doing was in any manner to enure to her benefit or advantage. In this case, Williams availed himself of his position as the plaintiff's agent, to make a contract on his own account and for his own indi
 
 I
 
 vidual benefit. In thus dealing he did not act or assume to act as the plaintiff’s agent. He required compensation for a service which he alleged he rendered to Baldwin. It was his individual affair, not that of the plaintiff, and if it was a shift or device on his part to take and receive usurious interest to himself on this loan, he has subjected himself to the penalties of the statute. (3 Hawk’s Rep., 28;
 
 Com.
 
 v.
 
 Frost, 5
 
 Mass., 53.) It was conceded on the argument that the plaintiff had not subjected herself to an indictment for misdemeanor: that she was not liable
 
 criminaliter
 
 for these acts of her agent. Hoes not this concede too much on the part of the defendants ? Is it .not a concession that she has not taken and received any usurious interest on this loan. If so, how. can it be contended that she has forfeited her money loaned, so far as she is con
 
 *224
 
 cerned, legally ? The agent has taken and received the gratuity or usury, and not the principal. To render the transaction usurious as to this plaintiff, we have to establish that she took and received the unlawful interest, and from this fact we infer the corrupt intent. Now in the present case it is . undeniable that Williams himself took and received the $25, paid for alleged services rendered by him. If he took' it and received it as the plaintiff’s agent, then he took and received it for her and as her money. But on the facts disclosed in this case, can it be for a moment contended that the plaintiff could have recovered this money from Williams as so much money paid to him for her use ? Clearly not. Again, by the third section of the statute cited
 
 {supra),
 
 it is provided that if any person shall pay any greater sum for the loan of money, than is allowed by law, he may recover such excess beyond the legal rate of interest in an action against the person who shall have taken and received the same. Baldwin had an action, therefore, to recover this excess; but against whom could he have maintained it? Certainly not against the plaintiff. She never took or received it. Her agent was never authorized to take and receive it. On no principle could the action have been maintained against her; and it is equally clear that it could. have been against Williams, if it was a shift to cover usury, for .he was the person who took and received it, and retained it and applied it to his own use, We think these tests conclusively show, that the plaintiff did not take or receive, or agree to take or receive on this loan of $400, any greater sum than the legal rate of interest, and that the defence of usury is not .sustained.
 

 But it is urged with great earnestness and ability, that the plaintiff, by accepting the note and commencing this suit upon it, has ratified all the acts of her agent, connected with the loan and attendant upon its inception. We have looked carefully at all the authorities cited by the learned counsel for the defendants, and we think‘they fail to sustain the proposition contended for. The plaintiff, by receiving and accepting the note for the amount of her money, and which she loaned through her agent,
 
 *225
 
 only ratified the contract of loan at the rate of interest expressed in the note. She had no knowledge of, and cannot be held to have ratified the payment by Baldwin’s agent to Williams, of the §25, usuriously by him taken as is . said. We think the cases fully sustain this view of the plaintiff’s act, in receiving the note and commencing suit thereon.
 

 When an act is done for another, by a person not assuming to act for himself but for such other person, though without any precedent authority whatever, it becomes the act of the principal if subsequently ratified by him. In that case the principal is bound by the act, whether it be for his detriment or his advantage, and whether it be founded on contract or tort, to the same extent and with all the consequences as if done by previous authority. But when the agent did not assume to act for another, but acted for himself and for his own benefit, a subsequent ratification does.not bind the principal.
 
 (Wilson
 
 v. Tumman, 6 Man. & Gr., 238.) Where a landlord authorized a bailiff to distrain for rent due from his tenant, directing him not to take anything except on the demised, premises, and the bailiff distrained cattle of another, supposing them to be the tenant’s, beyond the boundary of the farm, and the cattle thus taken were sold, and the landlord received the proceeds, the landlord was held not to be liable in trover for the value of the cattle, unless it was found that he ratified the act of the bailiff with knowledge of the irregularity, or chose without inquiry to take the risk upon himself and to adopt the whole act; and it was also held that by adopting and ratifying what he had authorized, he did not adopt and ratify the unauthorized acts of his agent. In
 
 Bush
 
 v.
 
 Buckingham
 
 (2 Ventris, 83), the plaintiff made a loan of
 
 £50,
 
 at a legal rate of interest. She referred the borrower to her scrivener who would draw the bond to secure the loan, and the scrivener, in error and against her will, included therein more than lawful interest. In a suit on the bond the defendant interposed the defence of usury, but it was overruled as there was no intent on her part to take or receive more than lawful interest; and it was held that by commencing suit on the bond
 
 *226
 
 she did not ratify the act of her agent, in providing for the payment of more than legal interest, but that she might recover the amount loaned with lawful interest. In
 
 Buckley
 
 v.
 
 Guildbank (C
 
 ro. Jas., 678), it was resolved that a bond given on the 23d of May,
 
 1617,
 
 on loan of £120 conditioned for the payment of £132 upon the 24th of May next ensuing, was for the payment of that sum on the next day, and therefore on its face usurious, and it was held, that forasmuch as the agreement is found to be to make the loan for á year, and that the assurances were for the payment at the end of the year, and as by the scrivener’s mistake it is made payable the next day, it is not usury within the statute, for there was not any corrupt agreement betwixt them, arid the act of a stranger shall not bring him within the danger of the statute, especially it being found that he did not require payment until the end of the year.
 
 Neveson
 
 v.
 
 Whitley
 
 (Cro. Chas., 501), was an action of debt on bond for £100, dated 12th July, with condition for the payment of £58 at the end of six months. The defendant pleaded the statute of usury, and that the obligation was void. The plaintiff replied that he lent the money for a year, and that the defendant should pay £8 for the forbearance for a year, and that the plaintiff would not demand it until the expiration of a year, and by the scrivener’s mistake it was made payable at the half year’s end, and he not knowing thereof accepted the bond. It was objected that this allegation was against the words of the bond. But the-whole court held, the plaintiff might well make the allegation, for it is showing the true agreement that no interest was to be paid by said agreement but such as stood with the law. The case of
 
 Baxter
 
 v.
 
 Buck
 
 (10 Vt. Rep., 548), is not unlike the present. The plaintiff, as administratrix of William Baxter, held a note of $250, made by the defendant, and the same was presented to him for payment by her son Portas Baxter. On that occasion a new note was given by the defendant for the same amount, and the time of payment was agreed to be extended by Portas Baxter, on the defendant agreeing to pay twelve per cent interest on the anymnt of the note, which he did by giving, his note to Portas
 
 *227
 
 Baxter for such interest. The court held that this note for the usurious interest was taken by Portiis without the consent or knowledge of the plaintiff and inasmuch as there was a
 
 bona fide
 
 debt due to her, and the note in suit was only for the just amount due, it would not be void if Portus Baxter, without her consent, received a note to himself for any further sum.
 

 The appellant’s counsel relies with much confidence upon the case of
 
 Austin
 
 v.
 
 Harrington
 
 (28 Vt. Rep., 130). A careful examination of that case will show that it is not in conflict with what was decided in
 
 Baxter
 
 v.
 
 Buck (supra).
 
 In this case the court affirm the rule laid down in that, and say it was a case of a limited or special agency, in which the employment was only for that single transaction, and where the principal was not bound by any act of the agent, not expressly authorized by her. The court say they have no occasion to question the soundness of that decision, as the case then under consideration was not one of that character. It was that of the dealings of a general agent in the transaction of her ^business, and being such general agent, the plaintiff, with full knowledge of all the facts, had ratified his act..
 

 In any view which we have taken of this case, we do not see that the $25 paid to Williams was. for the benefit of the plaintiff, or that she had any interest whatever in it. While we intend to uphold the law prohibiting the taking of usury, in its integrity, so long as it remains on .the statute book, we are not called upon to punish the innocent, at the call of a confessedly guilty party who has enticed her agent into a violation of the statute, which is now sought to be availed of to defraud her of money undeniably hers, and loaned, so far as she is personally concerned, in good faith, and upon such an agreement on her part “ as stood with the law.”
 

 The judgment appealed from should be affirmed.
 

 Selden, Clerke, Wright and Bacon, Js., concurred.'