JOHANNA BELL and MARGARET HINCHMAN, Administratrices of CHARLOTTE S. EARLE, deceased, Appellants, *v.* OLIVER H. DAY, DANIEL FLETCHER and ABRAHAM WITMIRE, Respondents.

Where the principal delivers money to his agent to be loaned, and the agent, without authority from, or the knowledge of, the principal, in loaning the money, charges besides lawful interest a *bonus* for himself, the court, on the authority of *Condit* v. *Baldwin*, held that the contract of loan is not thereby rendered usurious.

THIS was an action on a promissory note; defense, usury. The action was brought by one Charlotte Earle, the payee of the note. Since the recovery and affirmance of the judgments in the courts below, Mrs. Earle has died, and the appellants, who are her administratrices, have been substituted. It appeared in substance on the trial that Mrs. Earle had one thousand dollars in gold, which she desired to loan on bond and mortgage. That one Glover was, and for several years had been, her general agent. That application was made to him on behalf of defendant, Day (who was the principal in the note), to borrow Mrs. Earle's money on a note bearing interest, to be made by him and the other defendants, and that it was agreed in substance between Glover and the party acting for Day, that as a condition of making the loan on the note, Day should pay Glover fifty dollars. Day and another of the defendants, and one Vedder, met at Glover's house, where Mrs. Earle also lived, but occupying other rooms from that in which the business was done. The note in suit was produced. Glover went to Mrs. Earle's rooms and there received from her the $1,000 in gold, brought it to the room where the defendant, Day, was, and handed the same to him. He and others counted it, and afterward Day separated $50 from the packages, and, as some of the witnesses testified, left that sum lying on the table, and, as others testified, handed it to Vedder. The note was delivered to Glover, and by him taken to Mrs. Earle. Vedder took the $50, and subsequently handed the

same to Glover, who deposited it in a bank which failed, and Glover lost the money. Evidence was given on the part of plaintiff tending to show that an agreement had been made between Vedder and Day, by which the latter was to give Vedder the fifty dollars for procuring the loan. The defendants called Mrs. Earle, who testified that she knew nothing of the arrangement by which the fifty dollars was to be paid, or that such sum was paid to any one, and that she never heard of the fifty dollar transaction until after the suit was brought. That Glover was the only person who spoke to her on the subject of the loan; that he said nothing about any fifty dollars; that he persuaded her to make the loan, representing that the note was as good as a mortgage; that she delivered to him the $1,000 in gold, and he soon afterwards brought her the note in suit. These facts, as testified to by her, were not contradicted.

The court, amongst other things, charged the jury that if Day employed Vedder as his agent to procure the loan, and agreed to pay him fifty dollars for his services, and afterward paid the fifty dollars to him in pursuance of such agreement, the transaction was not usurious; that if they found such employment by Day of Glover, and that Glover had the fifty dollars as Day's agent, the transaction was not usurious. But if the jury found that Glover was the general agent of the plaintiff, and claimed and took the fifty dollars bonus for the plaintiff as her agent, and for the purpose of obtaining more interest than at and after the rate of seven per cent, although the plaintiff was ignorant of the fact, and did not specially authorize it, yet she was bound by the acts of Glover, as her agent, and the defendants were, in that case, entitled to a verdict. To this part of the charge plaintiff excepted. The court further charged that the principal is bound by the acts of the agent in the loaning of money at a usurious rate of interest, although the same be done without the knowledge or consent of the principal. To this the plaintiff also excepted.

The plaintiff's counsel asked the court to charge, that if Glover took or received the fifty dollars without the knowledge or consent of plaintiff, it was not usury, and plaintiff

would be entitled to recover on the note in suit, but the court declined so to charge, to which plaintiff's counsel excepted.

The plaintiff's counsel further asked the court to charge, that under the evidence, plaintiff was entitled to a verdict; the court refused so to charge and plaintiff's counsel excepted.

The jury found a verdict for the defendants. A motion was thereupon made on the judge's minutes at the same circuit for a new trial. The court granted the motion; on appeal founded on case and exceptions from the order granting the new trial, the order was reversed by the General Term; the plaintiff thereupon appealed from the judgment entered on the verdict, on the same case and exceptions and the judgment was affirmed, whereupon the plaintiff appealed to this court.

*Cyrus E. Davis*, for the appellants.

The judgment should be reversed and a new trial granted upon the exceptions in the case.

1. The case of *Condit* v. *Baldwin et al.* (21 N. Y., 219), is directly in point. DAVIES, J., says: "It is the essence of an usurious transaction that there shall be an unlawful and corrupt intent upon the part of the lender to take illegal interest," &c. "Now we have seen that the plaintiff never authorized any such violation, and never knew or had any intimation that her agent had violated it."

2. The court erred in refusing to charge as requested. That if Glover exacted and received the bonus for himself without the knowledge or authority of the plaintiff, it was not usury. (*Condit* v. *Baldwin, supra.*)

*A. P. Floyd*, for the respondent.

The facts in the case of *Condit* v. *Baldwin*, are not sufficiently like those in this case to make that an authority in point.

In *Condit* v. *Baldwin*, Williams, the agent of the lender, did not assume to act for his principal in that respect, and so informed the borrower.

In this case the bonus was paid to Glover as the general agent of the lender, for her, in pursuance of an agreement made by him as her general agent, who did all the business of his principal, dealt with a third party as such agent, without disclosing that his authority was limited.

There is an important distinction between the powers of a general agent, and one employed for a special purpose. The principal is liable for the acts of a general agent, though he act contrary to private instructions. This rule is necessary to prevent fraud, and encourage confidence in dealing. (2 Kent. Com., 806, 8th ed.)

The principal is liable for the fraud and false representations of his agent, made without the knowledge or consent of the principal. (*Bennett* v. *Judson*, 21 N. Y., 238; Har. Digest, vol. 1, cases cited on pp. 104, 108. Especially *Irving* v. *Motley*, 5 Moore & Payne, 380; 7 Bing., 543; Chitty on Contracts, p. 198, and notes in 9th Am. ed. on p. 199; *Nelson* v. *Cowing*, 6 Hill, 336; *Sandford* v. *Handy*, 23 Wend., 360.)

DAVIS, J. The court below, in reversing the order for a new trial made by the judge at circuit, distinguished this case from *Condit* v. *Baldwin* (21 N. Y., 219), and held that neither the charge as given nor the request to charge raised the point involved in that case. The conviction of the learned justice, by whom the opinion of the court below was pronounced, that "the doctrine of *Condit* v. *Baldwin* is somewhat novel and difficult to sustain, and for that reason should not be applied to cases not clearly falling within it," led him, it is apprehended, to seek for a distinction where no real difference exists. In *Condit* v. *Baldwin*, the plaintiff had left in the hands of her agent, $400, to be loaned for her. In the absence of any proof to the contrary, the court assumed that the authority of the agent was to invest according to the laws of the State. "All the authority, says DAVIES, J., given to Williams as her agent and attorney to transact the business of his principal, must, in the absence of any counter proof, be construed to transact it according to the laws

of the place where it was to be exercised. The law will never presume that parties intend to violate its precepts." (*Owings* v. *Hull*, 9 Pet., 607.)

Williams, the agent, loaned the money upon a promissory note, reserving on its face interest at seven per cent. Between him and the party who effected the loan, it was agreed that he should have $25 for his fees; and this sum was paid to him out of the moneys loaned. This court held that this did not constitute usury in the principal, nor affect the security in her hands. In the case now before us, the plaintiff delivered $1,000 to her agent to be loaned upon the note in suit, which was precisely for that sum, with lawful interest. The particular note had been described to her; and she had been "argued," as the case states, into a consent to loan the money upon it by the agent's representation that "it was as good as a mortgage." She had no knowledge of any agreement by which the agent was to receive the fifty dollars. It stands uncontradicted in the case that the fact that fifty dollars was to be, and was paid to the agent, was wholly unknown to her till after she brought her suit upon the note. The facts, therefore, in this case are stronger even, for saying that the authority she gave her agent was to invest her money according to the laws of the State. The presumption arises not simply on the absence of proof of any intent to violate the law, but upon affirmative proof that she was informed that a note which, upon its face, conforms to the law, was to be the security for the loan, and was, in fact, totally ignorant of the alleged agreement to pay her agent fifty dollars. The distinction made by the court below between this case and the one cited is based upon the suggestion that neither the charge nor the request to charge presented the idea that the agent was to receive the fifty dollars *for himself and not for the plaintiff*. This suggestion is true, so far as the charge that was made, is concerned. In that the justice stated to the jury that "if the agent of the plaintiff claimed and took the fifty dollars *for the plaintiff* as *her agent*," the plaintiff was bound by his act, although she had not specially authorized it, and was ignorant of the fact. The court further charged that the

principal is bound by the acts of the agent in loaning money at a usurious rate of interest, although the same be done without the knowledge or consent of the principal, to which plaintiff also excepted. The plaintiff's counsel then asked the court to charge " *that if Glover* took or received the fifty dollars without the knowledge or consent of the plaintiff, it was not usury, and the plaintiff would be entitled to recover upon the note in suit." This the court refused, and plaintiff excepted. Glover, it is true, was the agent, but it is manifest from such a request following such a charge, that *Glover*, the person, and not Glover, the agent, was meant by the request. Otherwise the request simply asks the court to negative, by a further charge, the exact proposition just presented to the jury and excepted to by plaintiff. Besides, it is manifest that the judge himself understood the request to mean "if *Glover*, for himself, took and received the bonus," for in deciding the motion for a new trial on his minutes, he says: " The case of *Condit* v. *Baldwin* (19 N. Y., 219), has never seemed to me to be sound law; but it is very clear that this court is bound by it until it shall be reversed by the court of last resort. The evidence on the part of the plaintiff warranted her in asking the court distinctly to put the proposition to the jury whether Glover " exacted the bonus for himself as a condition of making the loan without the knowledge or authority of his principal." This, it seems to me, was the substance of the request to charge; and under the rule laid down in *Condit* v. *Baldwin*, I think the court committed an error in refusing to charge as requested. There was, therefore, no misleading of the court at the trial by any absence of explicitness in the request; and where that fact palpably appears by a ruling of the judge who tried the cause, this court is not called upon to exert any severity of criticism to condemn the form of the request. But it further appears in this case, as it seems to me, that the only agreement the evidence tended to prove, so far as it went to uphold the defendant's case, was, that the fifty dollars was to be paid to Glover as a bonus to himself for making the loan. He bargained for himself; he received the money; he kept it and lost it; the plaintiff remaining

all the while in complete ignorance of his agreement and of his acts in respect to it. The request to charge is, therefore, properly referable to these facts, and should be construed to mean "if Glover took and received the money, as the evidence tends to show," then it was not usurious. A careful examination of this question brings me to the conviction that so far as relates to the question presented by the request to charge, this case is not justly distinguishable from *Condit* v. *Baldwin ;* and if that case be conclusive evidence of the law, the judgment in this should be reversed and a new trial granted.

But I am not without hope that this court is prepared to revoke its decision in *Condit* v. *Baldwin.* The error of that case has not become so inveterate, that to adhere to it is better than to return to sound principles. The circumstances of the times since its promulgation, owing to the inflation and character of the currency, have been such, that the usurer's "occupation's gone." It has wrought, therefore, little if any of the evil that ordinarily would attend a practical annulment of the statute against usury. To retract the decision now, will be in time to guard to some extent against the ills of a future revulsion, in which avarice may prey upon necessity, through the wide breach that case has opened in the law of usury. After the clear and forcible dissenting opinion of COMSTOCK, Ch. J., in *Condit* v. *Baldwin,* it borders on arrogance in me to assume to discuss the question. The few suggestions to be made, can hardly escape the censure of being unnecessary repetitions.

In this case (as in *Condit* v. *Baldwin*), the plaintiff delivered her money to her agent, to be loaned for her at lawful interest. Such, as we have already seen, is the necessary legal inference in the absence of other instructions. The agent entered into a contract with the borrower for loaning the money, whereby it was agreed as a condition of making the loan, that he should secure to the principal the amount lent, with lawful interest, and pay to the agent for his own benefit the sum of fifty dollars. By the very terms of the contract, the fifty dollars is stipulated to be for·

the use of the agent. This contract is a manifest departure from and abuse of the authority of the agent. A vital error of *Condit* v. *Baldwin*, lies in assuming that the agent can make this contract, so that the bonus will belong to him, and not inure to the benefit of his principal. But that is an impossibility both at law and in equity. To hold the contrary is to assert, that an agent, by violating his duty, can secure gains to himself greater than its performance could give him. It is a principle too well settled to be shaken, that an agent cannot so deal with the subject matter of his agency, whether within or without the scope of his authority, that the profits therefrom shall inure to himself. "Not only interest," says Paley, "but every other sort of profit or advantage clandestinely derived by an agent from dealing or speculating with his principal's effects, is the property of the latter, and must be accounted for, so that if an agent who has purchased goods according to order, sell them again to advantage, with a view of appropriating the gain to himself, although he should have answered the loss, if any, yet his employee is entitled to the profits. For such conduct is a fraud from which no advantage can be derived to the person practicing it." (Dunlap's Paley on Agency, 51.) The learned judge who delivered the prevailing opinion in *Condit* v. *Baldwin*, says: "But on the facts disclosed in this case, can it be for a moment contended, that the plaintiff could have recovered this money (the bonus) from Williams, as so much money paid to him for her use? Clearly not." No authority is cited for this position, and it would be difficult to find one. To hold that a party employed to loan money for another, may make it the condition of a loan that the borrower shall pay to him a sum of money in which his employer shall have no interest, is to subvert the fundamental principles upon which the doctrines of principal and agent, trustee and *cestui que trust* rest. It would soon overthrow all agencies, if the courts were to settle, that an agent could, by departing from his authority, stipulate for and hold advantages for himself. The personal gain of the agent would become the primary motive of his conduct, and thus thwart the policy of the

law, which has ever been to preserve his truth and faith toward his employer, by denying him all possibility of advantage, by fraud or treachery, or departure from the plain line of his duty. If there were no statute of usury in existence, who would be embarrassed by the question to whom belonged all sums paid, as a condition of an agent's loaning his principal's money, left in his hands, as was the case of Mrs. Condit, no matter in what form or in whose name they were paid, or by what name called?

But the statute of usury does not at all embarrass the question, for it is well settled, that if the money has actually come to the agent's hands, the illegality of the transaction of which it is the fruit, does not affect the right of the principal to recover it of the agent. (Dunlap's Paley, 62.) " For though the law would not have assisted the principal by enforcing the recovery of it from the party by whom it was paid, because it is the policy of the law not to aid the completion of an illegal contract, yet, when that contract is at an end, the agent, whose liability arises solely from the facts of having received money for another's use, can have no pretense to retain it." In *Tenant* v. *Elliott* (1 B. & P., 3), a broker had effected an insurance upon a ship engaged in a trade forbidden by statute, and having received a loss, refused to pay it over to his employer, alleging the illegality of the transaction as his defense. The court upheld a verdict against him. In *Farm* v. *Russell* (1 B. & P., 296), the defendants received money as the price of counterfeit coin which they had been employed to carry, and procure payment for, from parties who had purchased it; it was held, that the illegality of the transaction furnished no defense to them in an action for money had and received. (And see *Armstrong* v. *Toler*, 11 Wheat., 258.) The same rule has been laid down in courts of equity (7 Ves., 473; 13 Ves., 313.) And there is no difference in this respect between a transaction that is *malum prohibitum*, and one that is *malum in se*. (Dunlap's Paley, 64.) In this case, Mrs. Earle, I think, would have had no difficulty in forcing her agent to disgorge the fifty dollars he had extorted for himself, at any time after the facts came to

her knowledge. What effect her doing so might have upon the original contract as a ratification, is another question. It is a mistake, therefore, to assume that the law will see in a transaction of this character, two contracts, one of which belongs to the principal and the other to the agent. The law discerns but one contract, as in point of fact there was but one, between the lender and the borrower, of which the stipulated condition of an illegal bonus, was as much a part as any other of its terms.

But it is argued there can be no violation of the statute against usury without an intent to violate it; and that the intent, in this case, pertains solely to the agent, and in no sense affects the principal, because of her total ignorance of the illegal condition of the contract. This position is undoubtedly sound, so far as the question of intent affects the plaintiff, *criminaliter.* She could not be prosecuted criminally until she had knowingly ratified the transaction by receiving the stipulated usurious premiums. Until then the crime is the agent's alone. But in considering this question of intent we must not confound the personal intent, which is the essential ingredient of crime, with the legal intent which the law deduces from the acts of the parties, independently of any guilty motive on their part. This may be well illustrated by the two propositions that arose in this case. Mrs. Earle was totally ignorant of everything done by her agent in regard to the fifty dollars. It is obvious that he never designed that she should know aught of the fifty dollars paid to him, but intended to keep it wholly for himself. Now, the court charged that if the contract of the agent was, that the fifty dollars should be paid to him *for Mrs. Earle,* the transaction was usurious, notwithstanding it was made without her authority or knowledge, and she was utterly ignorant of that portion of it. This is assumed to be sound, and a distinction is attempted to be drawn between the case of *Condit* v. *Baldwin* and this one, on the ground that the secret condition stipulated the bonus for Mrs. Earle, and *not for the agent.* But is it not manifest that the total ignorance of Mrs. Earle, in either view, shields her equally from the

imputation of an intent to violate the statute? She could have no such *personal, actual* intent, in the one case more than in the other; and so, if the absence of actual intent, on her part, to take usury, enables her to enforce the note in one case there is no reason why it does not in the other. We may exclaim, in the language of the opinion in Condit's case: "Now we have seen that the plaintiff never intended to violate the law, never authorized any such violation, and never knew or had any intimation that her agent or attorney had violated it! Can it be truly said that the plaintiff has ever made the usurious agreement which it is essential to find was made by her before we can sustain the defense in this cause? It is not pretended that she made it herself, but it is said that it was made by her agent, and, therefore, it is her agreement, and she must suffer the consequences of his acts. This is upon the trite maxim *qui facit per alium facit per se.* The authority given to the agent was, as has been shown, to loan her money at legal interest and according to the laws of the State. But the agent, instead of adhering to his instructions, at the solicitation of the defendant Baldwin's agent, departs from these instructions and violates the law. Is this the act of the principal by which she can be bound?" It is not perceived why the force of this reasoning is not equally applicable to the case where the contract of the agent stipulates the usurious premium *for his employer*, he being ignorant of the fact, and the act being an excess of authority. There is no difference, because the same absence of a supposed necessary intent to violate the statute exists in both cases. One fallacy of the argument is in supposing *an intent to violate the statute necessary* to avoid a contract which is contrary to its provisions. Usurers never act on such an intent; their intent is not to violate but to evade the statute; but whenever they do the act or make the contract which, directly or indirectly, accomplishes a reservation of the forbidden interest, the law adjudges the statute to be violated, and does not hear them say they did not mean to break the law. It is always enough to design to do the act which the law holds to be a violation of the statute. So if

parties, in total ignorance of the statute, give and receive a note, bearing, on its face, ten per cent interest, payable in this State, the law declares it to be usurious, notwithstanding their mutual ignorance of the statute, because they designed to make the note as it was made. They may show that the note was so written by mistake, the intent being to write it differently; but not their ignorance of the law and consequent freedom from intent to violate it.

"It is not necessary to the offense, says Sᴜᴛʜᴇʀʟᴀɴᴅ, J., in *N. Y. Fireman's Ins. Co.* v. *Ely* (2 Cow., 706), that there should be an *actual intention to violate the statute*. It may be committed by one who, in point of fact, never heard of the statute. Whether the party intended to take more than seven per cent, by way of interest, is a question of fact for the determination of the jury. If it be found that he did, it is an invariable inference of the law that it was taken in pursuance of a corrupt agreement, which constituted the offense." And see cases cited by Judge Sᴜᴛʜᴇʀʟᴀɴᴅ, *ubi supra, et seq.*) So where an excess of interest was intentionally taken upon a mistaken supposition that banks were privileged in this respect, to a certain extent, it was held that it was a corrupt agreement in the sense of the law; for ignorance of the law will not excuse." (*Maine Bank* v. *Butts*, 9 Maine, 55, 2 Cow., 706.) And so, also, where an erroneous mode of computation was adopted, under claim of a right so to compute the interest, the effect of which gave more than seven per cent, it was held to be usury. (2 Cow.) The absence, therefore, of personal intent to violate law is of no importance where the question is whether the agreement, which was in fact made, is in conflict with the statute and therefore void. The only questions are, did the parties designedly make this agreement, and what is its legal effect.

In this case it is not doubted (nor was it in Condit's case) that the agreement made by the agent was a plain violation of the statute on *his part*. He designed to make the agreement reserving the fifty dollars to himself as a condition to the loan. The language of the statute is clear and explicit that all contracts whatsoever, whereupon or whereby

there shall be reserved or taken, or secured to be reserved or taken, any sum or value for the loan and forbearance of money greater than the prescribed rate of interest, shall be void. (1 R. S., 772, § 5.)

. The contracts Glover & Williams made are within the plain letter of the statute, and the evidences to secure the money loaned under those contracts were void in their hands. It is of no consequence that the excessive interest or bonus was reserved to be paid to them. The statute covers every case of unlawful reservation of interest, whether payable to the lender or to any other party. Will it be contended that the agents could enforce the notes if, instead of returning them to their principals, they had by some mode become owners of them? I do not think the learned judge, in *Condit* v. *Baldwin*, intends to go so far as to affirm that position, for he asserts the guilt of the agent in decided terms, holding him to be liable to an action under the statute for the recovery of the usurious bonus, and to an indictment for receiving it. As between the makers and the agent then, the note was void for usury. By what process is it freed from that consequence and made valid? By a fraud upon the law on the part of the agent in delivering the void note to his principal and concealing from her the contract under which it was made. A grievous wrong he undoubtedly commits; but does that act give vitality to paper void in his hands, for violation of the statute? If it does, then " *every agreement* " forbidden by the statute is not *void*, but only such as are made by principals directly, or by agents having authority to reserve usury. The question of the agent's authority is quite independent of the character of the agreement. *The agreement is, as it is in fact made*, whether made with or without authority; neither the ignorance of the principal of its terms, nor the want of authority to make them, can change its real form and substance. If its *form and substance* be against the statute, the contract is void, no matter who makes it, nor how much or how little power he possesses to make it. Every part of the contract is equally void. It is an entire and indivisible thing, though one part has been executed by the

payment of the fifty dollars and the residue remains evidenced by the note. Now is it possible that the principal can divide such a contract and enforce the security given for the loan? If that can be done, it must be on the ground that the loan itself was not usurious. But there can be no usury without a loan; and if the loan be not usurious, then there is nothing to base the idea of usury upon, and it is absurd to say that any part of the contract is obnoxious to the statute. That is saying that a usurious premium has been taken upon a loan not usurious within the statute, which is a legal impossibility and absurdity. The agent who effected the loan cannot be chargeable with usury, unless he made a usurious loan; and if he made such an one, then the evidences of it are void by statute, into whose hands soever they may come. It may be said the principal makes the loan, and the agent takes the usury; but the usurious premium is the consideration of the making of the loan, no matter who makes it; and as that fact cannot be expurgated by any argument, the taint of usury affects the loan, or there is no usury. It would have been better to have boldly said the transaction is not within the statute of usury at all, but mere extortion, than to uphold the loan as not void for usury, and condemn the bonus as evidence of crime, under the statute, against the agent.

It was urged in *Condit* v. *Baldwin* that the plaintiff, by accepting the note and commencing suit upon it, ratified all the acts of her agent connected with the loan and attendant upon its inception. It was answered by the learned judge, in substance, that those acts "only ratified the contract of loan at the rate of interest expressed in it;" that "she had no knowledge of, and cannot be held to have ratified, the payment by Baldwin's agent to Williams, of the $25 usuriously taken by him, as is said."

The true answer was that the accepting of the note and commencing suit upon it, were a ratification of nothing. Those acts being done in ignorance of the fact of the usurious agreement, cannot be held to ratify what was unknown to her. They were only evidence that she supposed she posses-

sed a valid note, made upon an authorized loan; and that was something which, if true, needed no ratification. The commencing of a suit, under such circumstances, put her in no position where she could not abandon it on the facts becoming known to her, and repudiate the unauthorized acts of her agents, and pursue the moneys actually loaned, or prosecute the agent for his violation of duty. The true question was not whether she had ratified anything, but whether, for the purposes of that suit, she could deny the authority of her agent to make the contract, while insisting upon seeking to enforce a portion of the very contract he had made. The rule is well stated by Mr. Hovenden, thus : " Though an agent act gratuitously in exceeding his authority, subsequent approbation adopts his acts; and this approbation will be inferred whenever the principal avails himself of any advantage derived from his acts, for he will not be permitted to avow his agent's negotiation as to part, and disavow as to the residue." (Hov. on Fraud, 144, 145; 1 Ves., Sr., 510; 1 Atk., 128.) If her agent had exceeded his authority in making the contract, the law gave her an election of remedies : To repudiate the contract and pursue her money into the hands of the party who had received it; to prosecute her agent for a violation of duty, and recover such damages as she had sustained by his misconduct; or to insist upon the contract he had made, taking it as in fact made, and, of course, in that proceeding, estopping herself from raising the question of his authority. Until *Condit* v. *Baldwin,* I think there was no case entitled to be regarded as authoritative that held she had any further rights. " I am not aware," says Beardsley, J., in *Dexter* v. *Davis,* 2 Denio, 651, " of any exception to the principle that one who endeavors to turn to his own advantage what others have assumed to do for his benefit, although without authority, is as to such act, deemed to stand in their place · and if what the assumed agents had done was fraudulent as to themselves, it is equally so as to him who thus adopts and assumes it." This question is so fully discussed by Comstock, J., in the case under review, that to follow it further seems to be mere supererogation. (See Story on Agency, § 250;

Dunlap's Paley, 172; *Benedict* v. *Smith*, 10 Paige, 127; *Corning* v. *Southland*, 3 Hill, 552; 5 Hill, 137, cases there cited, &c.

But this case should be determined upon the point that a usurious agreement made by any person or agent, with or without authority, in violation of the statute, can, under no circumstances, be divided so that any portion of the securities received under it can be enforced.

I am not able to see that the authorities cited by the leading opinion in *Condit* v. *Baldwin* sustain the position that the principal can repudiate the usurious agreement under which a note is given, on the ground of want of authority, and so enforce the security taken.    A brief review of these authorities seems to me to show that they fail of that end. In *Wilson* v. *Truman* (6 Man. & G., 238), a landlord authorized a bailiff to distrain for rent, expressly directing him not *to take anything except on the demised premises*.  The bailiff distrained cattle of another, on another farm, supposing them to be the cattle of the tenant.  The proceeds were paid to the landlord without any knowledge of the acts of the tenant. Held, that trover would not lie against him, because the act of the bailiff was a direct violation of his express orders, and the receiving of the proceeds in total ignorance of what the bailiff had done, did not amount to a ratification of his tortious acts.  This is an authority for saying that the receiving of the note by Mrs. Condit, in ignorance of the usurious agreement, was no ratification thereof, to which all will agree; but, in the case cited, what would the ruling have been if, after the bailiff had wrongfully distrained the cattle, the landlord had, with notice of the act, prosecuted the distress to a sale. His position would then have been analogous to one who is seeking with notice to enforce a demand taken in violation of authority by his agent.

In *Bush* v. *Buckingham* (2 Ventris, 83), the plaintiff made a loan at a legal rate of interest.  The scrivener who drew the bond inserted, by mistake, an illegal rate, and the plaintiff was permitted to show the mistake, to overthrow all presumption of intent to violate the law.  I am at a loss to

see how this is an authority for enforcing securities taken on a usurious agreement where there was no mistake, but a palpable and clear intention in the party to make the agreement as it appeared.

So in *Buckly* v. *Guildbank* (Cro. Jac.), a bond was executed May 23d, 1617, on a loan of £120, conditioned to pay £132 on the 24th day of May next ensuing. The court misconstrued the bond to be payable the next day after its date, but as the mistake was that of the scrivener, the loan having been in fact for one year and the interest lawful for that period, and for which the plaintiff had waited, it was more wisely held that there was no corrupt intent and therefore no usury. *Nevesar* v. *Whilly* (Cro. Chas., 501), is another case bearing wholly on the mistake of the scrivener in preparing a bond different from the agreement of the parties, and turning, therefore, on the absence of the corrupt intent.

In *Baxter* v. *Buch* (10 Verm., 548), an agent who was authorized to settle a debt due to an estate, took a note from the debtor to the administrator for the sum due, and another for a further sum to himself, payable at a future day. The court said, "inasmuch as there was a *bona fide* indebtedness to the estate of which plaintiff was admistratrix, and the note received by plaintiff was only for the just amount due, the note in suit would not be void if Porteus Baxter (the agent), without her consent, received a note for himself for any further sum." The court gave the point no further discussion and the case seems to have gone upon the idea that an original valid indebtedness, which the note represented, would not be avoided by a subsequent usurious agreement. This is the only case I have seen that seems to uphold the validity of the note to the principal in such a case; and although the same court, in *Austin* v. *Harrington* (28 Verm., 130), endeavor to distinguish the case, they seem to me necessarily to have overruled it. In that case, the defendant borrowed of plaintiff's agent a sum of money for which he gave his note, and on the same occasion, but without the knowledge of the principal, purchased a span of horses belonging to the agent, at a price much beyond their value, for the purpose of pro-

curing the loan. The court held this to be usury, and that the principal could not enforce the note to herself without deducting the usury received by the agent. " She claims," said the court, " the benefit of the contract, and is now seeking to enforce payment of the note." * * * The contract, as made by her agent, is thereby adopted and assented to; and she is and should be subject to all the legal consequences resulting from it." I think this decision of necessity overturns the other, although the court seek for a distinction in some fancied difference between a general and special agent as to the effect of the adoption. These are the cases cited by the learned judge to sustain the proposition that the plaintiff could enforce so much of her agent's contracts as conformed to the authority given, and reject the residue. But it is submitted they do not uphold the position; nor indeed add any force to the ingenious and able argument of the judge who pronounced the opinion of the court in *Condit* v. *Baldwin.* Let it not be understood that in throwing out these suggestions, light skirmishers as it were, I am abandoning the "fortress and rock of my defense," the dissenting opinion in *Condit* v. *Baldwin.* For the reasons assigned there, rather than here, I am in favor of disapproving the decision of that case, and consequently of affirming the judgment in this case.

BROWN, J. This action is brought to recover a promissory note bearing date March 25th, 1859, for one thousand dollars, with the interest six months after date, made payable to Charlotte S. Earle, or bearer, and signed by the defendants. The defense was usury. The jury found a verdict for the defendants, which was set aside by the judge, at Special Term, whose judgment was afterward reversed by the General Term of the Supreme Court for the eighth district. The plaintiffs then appealed to this court.

I find myself unable to extract any general principle from the case of *Condit* v. *Baldwin* (21 N. Y., 219), which will aid us in applying the statute of usury to contracts for the loan of money. We cannot with safety accept it as an adjudication that usurious contracts made by an agent for his principal, and without special authority in regard to the rate

of interest, are free from the consequences denounced by the statute, and may be enforced in the courts at the suit of the principal.   The consequences of such a rule would be to deprive the statute of any real vitality and living power, and reduce it to a mere *brutum fulmen.*   There are no legal analogies to sustain it, for where the contract sought to be enforced is that made by the agent, it is either good or bad, legal or illegal.   If the agent had power to make it, and it transgresses no rule of law, it is legal and may be enforced; but if he had no power from his principal to make such a contract, and especially if it be tainted with an element forbidden by law, the principal is not bound to accept it, and it cannot be enforced as an obligation against him—if in terms it creates an obligation—nor can he be affected or prejudiced by the consequences resulting therefrom.   This is the most that can be said.   He may repudiate and reject it so soon as its illegality comes to his knowledge—he may treat it as a nullity, and occupy the same position he would have been in had it never been made, and seek his remedy for what he has lost or been deprived of in some other form or against some other person.   He cannot, however, accept a part of it and reject another part.   It is entire and incapable of separation.   If it be plainly usurious, if it reserve to the lender a greater rate of interest than that allowed by law, it is none the less usurious because the agent had no authority to make it.   It is still a contract prohibited by law, and cannot be enforced.   When the agent has authority to do a particular, specified act, and does another, as where he is directed to seize the goods of A. in satisfaction of an execution, and seizes the goods of B.; or, where he is directed to make a distress for rent upon the demised premises, and makes his levy elsewhere, of course the principal is not bound, because he gave no such authority.   The measure of authority is co-extensive with the act, and the entire act done either is or is not within the scope of the authority given.   There is little analogy between cases of this kind and the case of an agent loaning money at interest for his principal.   His authority to prescribe the terms of loan, the

time of credit, the sureties to be given, and to part with the money, is not questioned. His authority is ample and complete in all things, except to fix a rate of interest greater than that allowed by law. In the cases which I have supposed, the entire act is wrongful, and no part or portion of it authorized by the principal. I am therefore unable to discover any analogy between them and a contract of loan by an agent, at a rate of interest greater than that named in the statute. No one would doubt, I think, that if the agent himself was the party to the contract in the place of the principal, that it would plainly be usurious. It does not cease to be so because the principal is the party and not the agent. It remains the same identical contract in all its essential particulars, and usury is of its essence whichever may be the contracting party. Suppose the note or bond taken by the agent reserves upon its face interest at a rate greater than that allowed by law. Could the payee or obligee uphold and enforce it upon the argument that it was taken by an agent who had exceeded his authority in regard to the rate of interest? This he could not do for the presence of the usurious rate of interest taints and subverts the whole transaction, and it is of no moment to the validity or invalidity of the contract how it came there. The same result must ensue when the illegal interest is not incorporated in the instrument, but exists outside of it. In such a case the action would not be against the principal to enforce a contract made by his agent. Then the question of power, the agent's authority to bind the principal and do what he has done, would arise and become the principal issue. But it would be an action by the principal himself against another to enforce a contract made by his agent which he confesses to be usurious and illegal, but seeks notwithstanding to uphold because the vicious element was put into it without his authority. This, to my understanding, is an absurdity pure and simple.

The judgment in *Condit* v. *Baldwin*, treated as an exposition of the law, strictly resulting from the facts upon which it was rendered, does not impair the force of the argument I

have sought to make. The plaintiff, a woman residing in New Jersey, had placed in the hand of Williams, a lawyer, residing in this State, the sum of $400, to loan out for her upon bond and mortgage, and was applied to by Mills, the agent of Baldwin, to loan the money upon a note. Nothing was said about the rate of interest, and no negotiations were had in regard thereto. Williams proposed to loan it on bond and mortgage, as, in that event, he would be benefited and receive his compensation for drawing the bond and mortgage, searching and examining the title. To indemnify him for the loss of this business, it was agreed, if he would loan the money upon a note in place of the bond and mortgage, he should be paid $25, which would have been about the amount of his compensation derived from a loan on bond and mortgage. This arrangement was effected, and Mills, the agent of the defendant, Baldwin, paid him the money. This constituted the usury. The plaintiff had no knowledge of the transaction. The money, it will be observed, was already in the hands of the agent Williams. He had been retained, and had incurred a responsibility in regard thereto, and had doubtless acquired some right to compensation therefor. If he might legally be paid this compensation, then it was a transaction which was separable from the contract of loan, and in which he might act for himself without prejudice to his principal. I think, in the present case, the facts are materially different in their character and justified the jury in regarding the contract as usurious and void.

The judgment of the General Term should be affirmed.

All the judges, except BROWN, J., concurred in the opinion that this case is not distinguishable from *Condit* v. *Baldwin;* and that the judge at the Circuit erred in not charging the jury as requested. DENIO, Ch. J., and PORTER, J., expressed their concurrence in the views of DAVIS, J., but acquiesced in a reversal on the authority of *Condit* v. *Baldwin,* on the principle of *stare decisis.* POTTER, J., concurred with DAVIS, J., both in his views and conclusions.

Judgment reversed and new trial granted. BROWN and DAVIS, JJ., dissenting.

NOTE, BY THE REPORTER. — It· will be observed that the only opinions delivered in this case, were by thoše who dissented from the judgment.  It was thought due, however, to the profession, that the case should be reported;  as a majority of the judges were against a reversal, if the principal point had been open to consideration as an original question; and two members of the court yielded to the authority of the decision in *Condit* v. *Baldwin* only on the principal of *stare decisis.*