## CRANE *vs.* A. HUBBEL & L. HUBBEL.

Where a person who was in want of the sum of $400 applied to another to assist him in obtaining a loan of that amount, and promised to give him $28, for procuring the loan, investigating the title and drawing a bond and mortgage therefor and putting them on record, and the agent thereupon applied to his own father for a loan of the money for a year, at seven per cent, and agreed that the title should be investigated and the securities made and put upon record without expence to him, and the father consented to make the loan without knowing that his son was to receive any compensation from the borrower for obtaining the money; *Held,* that the loan was not usurious, although the son when he took the bond and mortgage for the loan, in the name of the father, included therein for his own benefit the $28 which the lender had agreed to give him for his services.

Where a security which is given on a loan of money is valid at its creation, no subsequent agreement of the borrower to pay an usurious premium for the further forbearance of the loan will invalidate the original security, or prevent the collection of the money lent with legal interest thereon; but the subsequent agreement for the usurious premium only will be void. And where any usury has been received by the lender, under such subsequent agreement, it will in equity be considered as a payment towards the principal and legal interest due upon the security for the original loan.

THIS was an appeal from a decree of the vice chancellor of the seventh circuit. The bill was filed to restrain the defendants from proceeding, either at law or in equity, to enforce the payment of a bond and mortgage given by the complainant to the defendant A. Hubbel in May, 1830, and a note of $28 given to the defendant L. Hubbel in May,

January 29.

1831, on the ground of alleged usury thereon ; and for a decree that the bond and mortgage and note be delivered up and cancelled. The complainant charged in the bill that the money loaned belonged either to the defendant L. Hubbel, or that he had some interest therein. The defendant A. Hubbel the mortgagee put in his answer on oath denying that L. Hubbel had any interest whatever in the $400 loaned to the complainant. But he admitted that when the mortgage was originally given there was, as he had been informed and believed, $28 included therein that had been loaned by L. Hubbel to the complainant ; and which was repaid in May, 1831. He therefore denied that L. Hubbel had any interest whatever in the bond and mortgage at the commencement of this suit. He also denied that the defendant A. Hubbel even had any interest whatever in the note of $28.

By the answer of L. Hubbel it appeared that, in May, 1830, the complainant employed him to obtain a loan of $400 for a year, and promised to give him $28 for his services in procuring the loan, and in investigating the title and drawing the securities, &c. ; that L. Hubbel thereupon applied by letter to A. Hubbel his father, who lived at a distance, in behalf of the complainant, for the loan of $400, which he knew his father was about to receive from the estate of R. Hubbel ; stating the security which the complainant offered, and requesting his father to loan to the complainant the $400, to be paid in one year with interest, the borrower paying all expenses attending the loan. A. Hubbel consented to make the loan on the terms stated in the letter of his son, and authorized another son who lived in the same place with the complainant to draw for the money which was in the city of New-York. This sum, together with $28 of the money of L. Hubbel, were then loaned to the complainant for one year, at seven per cent interest, and the bond and mortgage was taken in the name of A. Hubbel to secure the whole amount, and the complainant thereupon paid to L. Hubbel the $28, which he had agreed to give him for procuring the loan, investigating the title, and drawing the bond and mortgage and putting the mortgage on record. At the end

of the year the complainant paid L. Hubbel his $28, and the interest thereon, secured in the mortgage to his father. He also paid him a year's interest on the $400, which he immediately remitted to his father. L. Hubbel also insisted upon payment of the bond and mortgage unless the complainant would consent to pay him $28 for the expenses of negotiating a continuance of the loan for another year. And about a week thereafter the complainant consented to give L. Hubbel a note, in his own name, for the $28 for negotiating an extension of the loan. This extension was afterwards assented to by the mortgagee, at the request of his son; but he had no knowledge of the fact that any note had been given, or that any premium was to be paid to the son for the negotiation of such extension. A replication was filed to the answers; but no testimony was taken by either party.

The vice chancellor decided and decreed that the bond and mortgage and the note were all usurious and void, and ordered them to be delivered up and cancelled. He also decreed a perpetual injunction against the collection thereof; and ordered the defendants to pay the costs of the suit. From that decree the defendants appealed to the chancellor.

*A. Taber*, for the appellants.

*M. T. Reynolds*, for the respondent.

The Chancellor. The decision and decree of the vice chancellor, declaring the bond and mortgage in this case usurious, was clearly wrong. The allegations in the bill that the defendant L. Hubbel had an interest in the $400 loaned to the complainant, and that he had some interest in the bond and mortgage at the time of the commencement of the suit were denied by the defendants; and no evidence whatever was adduced by the complainant in support of any allegation in the bill. Even if the answer of a defendant who was no way interested in this bond and mortgage could have been read as evidence against his co-defendant, the mortgagee, the answer of L. Hubbel does not establish the

usury charged in the bill. On the contrary it appears from his answer that the complainant employed him as an agent to negotiate the loan of $400 for him, and that the $28, which the complainant was to pay the agent, was not for the benefit of the lender of the money, but was intended as a compensation for his own services in procuring the loan, and for investigating the title, drawing the securities, &c. If the complainant, therefore, paid his agent more than those services were actually worth, it could not affect the validity of the contract for the loan with the agent's father, who knew nothing of the arrangement with the son, except that the title was to be investigated, and the security for the loan made perfect, at the expense of the borrower, and without any charge to the lender. A. Hubbel's agreement with his son, as the complainant's agent, was to lend the $400 for a year, at legal interest. And the facts, as detailed in the answers of both defendants, exclude the idea that this was a mere device on the part of the lender to obtain more than legal interest for the use of his money. If the money had been previously placed in the hands of the son for the purpose of being loaned out by him, as the agent of the father, a different question might have been presented, upon proof of the fact that $28 was more than a fair compensation for the trouble and expense of investigating the title, and preparing and recording the securities taken from the complainant for the loan. It is evident however, in this case, that L. Hubbel was not the agent of his father to loan this money at the time he made the agreement for the $28 for his services, and that he afterwards applied to his father for the loan, as the agent of the complainant, under that agreement. The fact that his son would be paid for his services in preparing the bond and mortgage, &c., and that the title would be investigated, without expence to himself, by one in whom he had confidence, were considerations which undoubtedly influenced the lender in making the loan to the complainant in preference to others. But there is nothing in the answers of either of the defendants to create a suspicion that A. Hubbel then supposed he was taking, or that his son intended to take, any more than seven per cent

interest for the loan. And he constituted the son his agent for the mere purpose of taking a bond and mortgage for the $400 with legal interest thereon.

The subsequent arrangement with the son to loan to the complainant the $28, for one year at legal interest, and to have it secured by the same bond and mortgage for his benefit, could not make the securities usurious and void, if they would have been valid for the $400 and interest in case the son had taken his $28 for his services and kept it instead of thus loaning it. And when that sum was repaid to L. Hubbel, at the end of the year, the bond and mortgage remained valid and subsisting securities, both at law and in equity, for the repayment of the original loan of four hundred dollars; in which L. Hubbel had no interest whatever. Such being the case, no subsequent agreement to pay an usurious premium for the further forbearance of the loan, even if made by the mortgagee himself, or by his agent for his benefit, could invalidate the bond and mortgage, or prevent the collection of the $400 and the legal interest thereon. The subsequent agreement only, for the usurious premium, would be void; and the money, if any, which had been received by the mortgagee or his agent, under the usurious agreement, would in equity be considered a payment upon the mortgage, *pro tanto*.

Whether the note of $28, which was taken by L. Hubbel in his own name and for his own benefit, is considered as an usurious premium for the further forbearance of the loan of $400, or as having been obtained by extortion and without consideration, there was no foundation for this suit; as nothing had been paid on the note. It is true the defendant L. Hubbel had commenced a suit at law on the note. But if the note was invalid, either for usury or for a want of consideration, that formed a perfect defence at law. And the complainant had no right to file a bill for relief in this court for the trifling sum of $28, when the statute has declared that this court shall dismiss all such bills with costs, unless the amount in controversy, exclusive of costs, exceeds the value of $100. And as L. Hubbel is in no way interested in the bond and mortgage, the decree of the vice

chancellor must be reversed *as to him*, as well as to the defendant A. Hubbel. The bill as to L. Hubbel must be dismissed with costs, according to the directions of the statute ; but without prejudice to the right of the complainant to defend himself as he may be advised, in the suit upon the note, or in any other suit to be brought thereon. The complainant must also pay to the defendants their costs on this appeal to be taxed.

A decree merely dismissing the bill as to the defendant A. Hubbel would probably have the effect to bar the complainant's equity of redemption absolutely. The decree must, therefore, declare that the bond and mortgage are valid and subsisting securities for the payment of the original loan of $400 *to the* mortgagee, together with the interest thereon from the first of May, 1831 ; but that the complainant is entitled to redeem the mortgaged premises upon the payment of the $400 and interest, together with the costs of the defendant A. Hubbel in this suit, which costs the complainant is decreed to pay ; and that if the mortgage money, with the interest and costs, is not paid within three months after the entering of the decree, the mortgagee is to be at liberty to apply to the court for a strict foreclosure, or for a sale of the mortgaged premises, or for such other directions herein as shall be just.

In the meantime the defendants are at liberty to take out execution against the complainant to collect the costs awarded to them ; and they may enroll the decree for that purpose.