HETFIELD *v.* NEWTON and others.

WHERE a defence of usury is interposed to the foreclosure of a mortgage, by the purchaser of the equity of redemption, the complainant cannot overcome it by proof that the lands were conveyed subject to the mortgage, unless his bill sets forth the execution and terms of such conveyance.

Application was made to D. for a loan to be obtained from his father-in-law H. D. negotiated the loan for $2600, and on taking the mortgage, gave his notes for $600, of the amount; but the loan was all advanced by H., to whom the mortgage was given. D. took a mortgage to himself for $300, for his trouble in doing the business. In a suit by H. to foreclose his mortgage; *Held,* that D. was a competent witness for H.

Application for a loan was made by parties in Western New York, to D. in New Jersey, they expecting D. to obtain the same from H., or some other person there. They offered to give D. $300, for doing the business and delivering them the money. D. obtained the loan of his father-in-law, H., took the money to the parties in Western N. Y., received their mortgage to H. for the loan payable with interest, and took a mortgage to himself for the $300.

*Held,* 1. That D. was the agent of the borrowers, and not of the lender, in negotiating the loan.

2. That after the loan was agreed upon, he was the agent of both, in perfecting it and taking the mortgage therefor.

3. That the lender was not affected by the agreement of the borrowers to compensate D., and that the mortgage to the lender was not usurious.

In the defence of usury, the proof must strictly sustain the allegation made in pleading. So where in an answer, the usurious agreement was stated to be, that H. was to advance the borrowers $2000, and D. was to give them his notes, one

for $150, and one for $450, making the $2600, for which the security was given ; and the proof showed an agreement by which H. was to advance $2052, iu cash, and $548, in the notes of D., one for $414, and the other for $148 ; it was held a fatal variance.

March, 7 ; May 27, 1846.

THIS was a bill to foreclose a mortgage for $2600, on lands in East Bloomfield, in the county of Ontario, dated April 1, 1840, and executed by Morris Newton and Darius Newton, to the complainant.   Amanda Newton was made a defendant, as having some title or interest, to or in the equity of redemption.   The testimony showed that the lands were conveyed to her, subject to the mortgage.

The Newton's put in an answer, stating that in the spring of 1839, M. and D. Newton applied to one Harvey Dayton, a son-in-law of the complainant, (the two latter residing in New Jersey,) for a loan of $2000, or $2500, offering to him all his expenses and an extra compensation of $300, beyond the legal interest, for the use of the money.   That in the winter of 1840, the negotiation was renewed, and the complainant assented to the terms proposed ; upon which Dayton in his behalf, came to East Bloomfield with $2000 : That they wanted $2600, and Dayton proposed to furnish the $600, out of his own funds.   And that finally it was agreed between them and Dayton, that the complainant should advance the $2000 ; Dayton should give them his two notes, one for $450, and the other for $150 ; the Newton's should secure the aggregate, $2600, by their mortgage on the lands in question, bearing interest at seven per cent. ; and that they should execute another mortgage to Dayton for $300, on a village lot in Seneca Falls, for the usurious interest or compensation stipulated for the loan of the $2600.

The answer then set forth the execution of this agreement on both sides, and it insisted that the mortgage for $2600, was usurious and void.

Issue being joined on this answer, both parties proceeded to take testimony.   Dayton was produced as a witness by the complainant, and was objected to by the defendants, on the ground that he was interested in the event of the suit.   The facts upon which the objection turned, will be found in the opinion of the

court. His testimony was taken, subject to the question as to its admissibility.

There were several witnesses examined in respect of the alleged usury, and the testimony was in some degree conflicting. It is deemed unnecessary to state it in detail, and the summary in the opinion delivered, will suffice for a proper understanding of the points decided.

*J. R. Van Rensselaer*, for the complainant.

*E. Foote Jr.*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The deed to Amanda Newton, which would probably preclude her from the defence of usury set up in the answer, is not admissible under the pleadings, for any other purpose than to show that she has an interest or claim in the equity of redemption. The complainant to avail himself of the deed, against the attempted defence, should have set forth the pretence of usury, and charged the execution of the conveyance to Amanda Newton subject to the mortgage, and her assumption to pay it.

The first great struggle on the part of the defendants, is to exclude the testimony of Harvey Dayton, on the ground of interest in the event of the suit.

1. It is argued from the evidence of Cory, that a part of the $2000 loaned in cash, belonged to Dayton.

The manner in which this witness connected Dayton's conversations with the loan to Newton, does not appear satisfactory to me. He states that his own application for money, was after Hetfield sold his farm, and that it was two or three years prior to his examination, which would bring it in 1842 or 1843. The loan to Newton was consummated the first of April, 1840, and on the defendants hypothesis, was in negotiation nearly a year before. The conversations related by Cory, undoubtedly had reference to the money Hetfield received for his farm.

On his first examination Cory could not tell to whom Dayton said the money went, nor whether he stated the person's residence. Even when a leading question was put, with Newton's

name at full length, Cory was unable to answer. When a lead-
ing question as to the place was put, he came up to that point so
far as to say it was in Western New York. On being recalled,
after a few day's interval, he not only recollected Newton's name,
but associated Dayton's conversations with the name of Newton,
as if the two things had never been dissevered in his mind.

Considering the great discrepancy as to the time, the manner
in which the witness's recollection was obviously screwed up to
the point, the statement in the answer and the virtual concession
throughout the residue of the defendants proof, that the $2000,
at all events, belonged to Hetfield ; I must say that Cory's testi-
mony does not make out Dayton's interest in any part of that
sum.

2. It is next said, that $600 of the sum in the mortgage, was
furnished by Dayton, and belongs to him.

The $600 is in fact $548, and for that amount Dayton gave
his notes to Newton. He said he would pay them, and the notes
were paid, and the receipt shows presumptively, that Dayton
paid the note of $148.

On the other hand, the mortgage, given to Hetfield alone, and
acknowledging the whole consideration as proceeding from him,
is a circumstance of weight. And I think the defendants have
proved by Ira R. Peck, in the admissions of Hetfield which they
called out to show Dayton's agency, that Hetfield furnished
money to the full amount of the mortgage.

In considering the question of Dayton's interest, his own testi-
mony is of course to be left out of view ; as the point must be
determined on the evidence upon which the objection was made
to his examination. Some other circumstances bearing upon his
interest, will be noticed in examining the case on the merits. It
is sufficient to say here, that the defendants have not made out
his interest in the $600, so clearly as to exclude him for that
cause.

3. The last ground of objection, is Dayton's avowed owner-
ship of the mortgage for $300, which mortgage, it is said, must
stand or fall by the result of this suit.

I do not perceive how this suit is to affect it at all. If Dayton
seeks to enforce it, a decree in Hetfield's favor in this suit will

not interfere with the defence of usury or extortion to that mortgage. Nor will a decree in this suit in Newton's favor, be a bar to Dayton's foreclosure.

My conclusion is, that Dayton is a competent witness. As to his credit, it may be observed that all the material witnesses on both sides, except Cory, are near relatives of the respective parties, or intimately connected by their present or former domestic relations. And Cory at one time had an unpleasant altercation with Dayton. Thus the testimony of all, demands a close and careful scrutiny.

On the merits of the case, the first thing that occurs upon the defence, is a variance between the usurious contract alleged, and that which is claimed to have been proved. The answer, after stating a proposal by the Newton's for a loan $2000 or $2500, at seven per cent. interest, and they giving in addition $300, secured by a separate mortgage, and the complainant's assent to those terms; proceeds to set forth that Dayton came with $2000, that they wanted $2600, and he proposed to furnish the $600 from his own funds. And the final agreement as stated in the answer, is that the complainant was to advance $2000, Dayton was to give two notes, one of $450, and the other of $150; and the Newton's were to secure the $2600 by the mortgage in question, bearing lawful interest, and to execute another mortgage for $300, for the usurious interest. Now the evidence does not sustain this statement in any of its particulars. If the $2600 be regarded, aside from the notes given by Dayton, the proof is clear that Hetfield agreed to loan and did loan the whole of it; and that although Dayton's notes were given for a part, (but not for $600,) he did not pay any portion of the amount. If the agreement be considered with reference to its minor stipulations, then it is proved that Hetfield was to make the whole loan, $2052 in cash on the delivery of the mortgage, and $548 in Dayton's two notes, one for $414, at six months, and the other for $148.

In this court, as well as at law, the proof of usury must strictly sustain the allegation in pleading. Any variance in its substantial terms, is held to be fatal. (*Vroom* v. *Ditmars*, 4 Paige, 526; *New Orleans Gas Light and Banking Co.* v. *Dudley*, 8 ibid. 452; *Smith* v. *Bush*, 8 Johns. 84.) Under these authorities,

I have no doubt that the variance in this case is material, and is fatal to the defence.

I have nevertheless considered the testimony in the cause, and will briefly state my conclusions.

The important question as to the usury is this: Was Dayton the agent of Hetfield in negotiating the loan, or was he the agent of the Newton's?

The amount which he claimed and secured as his compensation, is not very material in this respect. If he were Newton's agent, the exorbitance of his charges is nothing to Hetfield. If he were Hetfield's agent, he had no right to make any charge against the Newton's for his services.

Notwithstanding Dayton's liberal use of the pronouns, *I* and *we*, in his conversations about this affair, it is very evident that the Newton's did not expect him to make them a loan. He told them distinctly, on their first application, that he had no money to let, and there is no proof in the case that he had any, either in 1839 or 1840. He at the same time told them that Hetfield had money, and he thought he could make an arrangement for them with Hetfield. But in this he was mistaken, and the sale of the mortgage, which the Newton's proposed to make to raise money in 1839, was made elsewhere, and that negotiation dropped.

Newton's letter of January 18th, 1840, in connection with the previous transactions, is conclusive that he expected Dayton to obtain the money from Hetfield or some other person, and that he did not look to Dayton at all, as the lender of the money. He proposed the same terms as he had offered on the prior negotiation, viz: interest at seven per cent.; and he also offered to give to Dayton a mortgage of $300, to compensate him for doing the business. A letter of Dayton's, in answer to this, dated February 26th, 1840, is not produced, and the omission is a strong point against the defendants, on this important part of the case. It probably contained the distinct exposition of Dayton's true position in this matter of agency.

Pausing at this stage of the case, we find Newton desiring a loan, applying to Dayton, who had no money, to procure it for him at seven per cent., and offering for his services, a bonus or

commission of $300. This was clearly an agency for Newton. It was of no consequence to him whether Dayton procured the loan from Hetfield, or from John Doe.

To proceed, Dayton applied to Hetfield, and procured it from him. He applied at Newton's request. He did not ask Newton in behalf of Hetfield, to accept a loan. The difference of one per cent. between New York and New Jersey interest, was an obvious inducement to Hetfield to make the loan. Unless Dayton is perjured, Hetfield knew nothing about the $300 proposed to be given to Dayton, and Hetfield's assertion to that effect made to Peck, which the defendants proved, corroborates the testimony of Dayton. Up to the time that Hetfield consented to make the loan, Dayton was the agent of the Newton's beyond all doubt. From that time, until it was completed, he continued to be Newton's agent to effect it, and he was also Hetfield's agent to transmit the money, and receive and look to the security. But in the controlling feature of the case, the negotiation for the loan, he was in no respect the agent of Hetfield. He was acting for the Newton's, and Hetfield was acting and bargaining for himself.

This is my conviction upon the evidence, and if I am right in this conclusion, the principle of the cases of *Dagnall* v. *Wigley*, (11 East, 43 ;) *Coster* v. *Dilworth*, (8 Cowen, 299 ;) and *Crane* v. *Hubbell*, (7 Paige, 413 ;) is decisive against the defence.

In *Reed* v. *Smith*, (reported in 9 Cowen, 647,) though decided nearly five years before *Coster* v. *Dilworth*, it was palpable that the plaintiff was the actual lender of the money. The court dwelt upon the fact that the note never went out of his possession, and he negotiated the renewals and every part of the transaction. To make this case analogous to *Smith* v. *Reed*, the defendants should have set up that Dayton was in truth the lender of the money, and that the use of Hetfield's name was colorable throughout.

On the defence attempted by the proofs, as well as upon the point of variance, the complainant is entitled to a decree.

The principal sum being now due, the decree may be for a reference to compute the amount due, and for a sale on the confirmation of the master's report.