Porter *v.* Mount.

NATHANIEL R. PORTER *vs.* JOHN MOUNT and HARRIET MOUNT.

An action was brought against husband and wife, to recover an excess of interest beyond the legal rate, paid to them upon a loan. The complaint charged the defendants jointly with the receipt of the usurious excess, not stating that they were husband and wife. They were sued simply as joint debtors, and judgment was prayed against them jointly, and they defended separately, both denying the complaint. The jury found a verdict against the wife alone, not rendering any verdict for or against the husband. *Held* that there was a *mistrial*, and that no judgment could be entered upon the verdict.

*Held, also,* that the plaintiff could not be permitted to amend his complaint by inserting in it the proper statements alleging that the defendants were husband and wife, so that the verdict might stand, retaining the husband's name in the record as husband, but without any judgment against him.

But that the plaintiff might be allowed to dismiss the complaint and discontinue the action against the husband, to the same effect as if a verdict had been found in his favor, and enter a judgment on the verdict against the wife, if the court were satisfied that justice required it, and that the verdict was just and fair and no valid exceptions were taken, at the trial.

In a common law action for money had and received, brought against husband and wife to recover back money paid as a usurious premium upon a loan made by the wife of moneys of her separate estate, where the evidence tends to show that the husband made the bargains with the plaintiff for the loan, and for the extensions of credit, for his wife, and that she knew the character of the bargains so made, it is proper to charge the jury that if the wife knew her husband was receiving money for his own benefit, from the borrower, on account of the loan, she would be liable for the money so paid to him.

If a wife, loaning money which is her separate property, is cognizant of the acts of her husband acting in her behalf, in exacting a usurious premium, so

Porter *v.* Mount.

as to taint the agreement, as to her, with the usury, she will be liable to the borrower, in an action for money had and received, even though the money does not come to her hands, but is received by her husband and retained by him for his own benefit with her knowledge and consent.

Having consented that her husband and agent shall receive the money upon the corrupt bargain, the wife can not shield herself upon the plea that he has never paid it to her, but has kept it himself, by her consent. Payment to her agent, in such a case, is payment to her.

The judge, at the trial, may in all cases, in his discretion, with or without the consent of the parties, allow the jury to take to their room any written documents or papers received and used in evidence on the trial.

In common law actions, the name of no person should be in or upon the record as a party, except such as must have judgment pass for or against them. *Per* E. D. SMITH, J.

To reach a married woman's separate property, now, she must be sued alone. If sued with her husband, a judgment against both is really a judgment against the husband, as at common law. *Per* E. D. SMITH, J.

THIS action was commenced, to recover of the defendants for an alleged excess of interest upon a loan of $1000. The defendants answered separately, denying the complaint. April 15, 1857, the defendant, Harriet Mount, loaned the plaintiff $1000, of her own separate estate, at the legal rate of interest. The defendant, John Mount, received from the plaintiff afterwards, and on the same day, without the knowledge or assent of the defendant Harriet, $100 for his father, Enoch Mount, and $35 on his own account, for his personal services in going after and procuring the money. John Mount afterwards received $100 on his own account, or for his father. He also received $50 on his own account. John Mount had no authority from her to receive more than seven per cent. Harriet never directly or indirectly received more than seven per cent. She received all the money loaned, principal and lawful interest, except $70 paid to John when she was absent; she transacting her own business, and keeping her money separate from his. There was no pretense that the plaintiff paid the alleged excess to her, or any part of it; nor any evidence tending to show that he was authorized to subject her money loaned to a forfeiture, and herself to punishment as a criminal for a violation of the usury laws; but

it was proved by two witnesses, unimpeached, and uncontradicted on this point, that he was not so authorized. The action has been twice tried. The first trial resulted in a nonsuit, which the court, at general term, set aside and ordered a new trial. (*See* 41 *Barb.* 561, *S. C.*) On the second trial, the jury found a verdict in favor of the plaintiff against the defendant, Harriet Mount, alone, for $411.22, finding no verdict for or against the defendant John Mount. Various exceptions were taken, on the trial, and an order was made by the court, staying proceedings upon the verdict, to enable the defendants to make and serve a case, and to move for a new trial.

*Scott Lord*, for the plaintiff.

*Hakes & Stevens*, for the defendants.

E. DARWIN SMITH, J. When this case was before us on a former occasion, it came up on a motion for a new trial, the plaintiff having been nonsuited at the circuit, on the ground, chiefly, that the action was barred by the statute limiting actions by the borrower against the lender, for usury paid, to the period of one year after such payment. And the question raised and discussed, was, whether a married woman having a separate estate and loaning money on usury was liable to be sued for the excess secured over legal interest, so as to charge her separate estate.

We held that the action was not barred by statute, but lay at common law, as for money had and received, and granted a new trial on both grounds. (*See* 41 *Barb.* 562.)

On the second trial the jury having found a verdict against Mrs. Mount alone, and rendered no verdict for or against her husband, the plaintiff now asks leave to amend the complaint so as to retain the verdict; and the defendants move for a new trial. The complaint in the action charges the defendants jointly with the receipt of the usurious excess, and does

Porter *v.* Mount.

not state that they are husband and wife. They are sued, simply, as joint debtors, and judgment is prayed against them jointly.

The defendants have defended separately, and both deny the complaint. The jury having only passed upon half the issue, and not having found upon the issue joined upon the answer of John Mount, there is an evident mistrial, and no judgment can be entered upon this verdict.

The plaintiff asks to amend the complaint by inserting in it the proper statements, alledging that the defendants are husband and wife, so that the verdict may stand, retaining John Mount's name in the record as husband, but without any judgment against him. And if this can not be done, he asks leave to discontinue against him, and retain the verdict against his wife, and enter up judgment against her to be charged upon her separate estate. If John Mount is a necessary party upon the record, the plaintiff can not, I think, be allowed to amend the complaint, except upon the payment of costs. He was sued as joint contractor in making the loan and as jointly liable to refund the usurious excess over legal interest, and he has defended the action successfully, so far that the plaintiff has recovered no verdict against him, and he was clearly entitled, if not liable for the usury, to have a verdict rendered in his favor.

If the plaintiff, therefore, is to be allowed to amend his complaint by inserting therein the proper allegations to retain the name of John Mount upon the record as the husband of Harriet, upon the assumption that he was a proper party with his wife to the action, although no personal claim was made or recovery could be had against him, it could only be properly done, I think, upon the payment of his full costs as upon a dismissal of the complaint against him.

But I do not think this would be correct practice. In common law actions the name of no person should be in or upon the record as a party except such as must have judgment pass for or against them. Married women now sue and

are suable like unmarried women, and judgments are rendered for and against them, and enforced in the same manner as for or against other persons, under the statutes of 1860 and 1862.

In common law actions, before the Code, where husband and wife were necessary parties, judgment always went in favor of or against both, but was collected primarily of the husband's property, if he had any; if not it might be charged in equity upon the wife's separate estate. Executions on such judgments went only against the property of the husband for the reason that the wife had no separate personal property; all her personal property on her marriage vesting in her husband, and the usufruct of her real estate during coverture, belonging to him. To reach the wife's separate property, now, she must be sued alone; otherwise the judgment against both is really a judgment against the husband as at common law. I can think of no case at common law where a husband can be a proper nominal party and be sued merely as such with his wife.

But the plaintiff, I think, might be allowed to dismiss the complaint, and discontinue the action against John Mount to the same effect as if a verdict had been found in his favor at the circuit, and enter judgment on the verdict against Harriet Mount. I see no difficulty in granting the plaintiff's motion in this respect, if we are satisfied that justice requires it or would be subserved thereby, and that the verdict was in all respects just and fair and no valid exceptions were taken at the trial.

This brings us to the consideration of the defendants cross-motion for a new trial. The exceptions taken to the refusal of the circuit judge to nonsuit the plaintiff or dismiss the complaint as to one or the other of the defendants, I think, are not well taken. The jury might, upon the evidence, have found a verdict against John Mount or against Mrs. Mount and for the other defendant, and I do not think the judge was bound to take the case from the jury. And the same view

applies to the exceptions to the refusal of the judge, at the close of the trial, to charge the jury that there was no evidence to warrant a verdict for the plaintiff, which was equivalent to an application to the circuit judge to direct a verdict for the defendants, which I think he was not bound to do.

It is true, the evidence tending to charge Mrs. Mount with any knowledge of or assent to the receipt by her husband of the sums of money mentioned in the complaint was very slight. But I am not prepared to say that it was so slight that it should not have been submitted to the jury, and we are not now seriously asked by counsel to set the verdict aside as without evidence, or as so entirely against the evidence.

Another exception taken was to the refusal of the judge to charge, as requested, that the evidence must satisfy the jury beyond any reasonable doubt that the defendant Harriet Mount received or authorized the reception by John Mount as her agent of the several sums mentioned in the complaint, or some of them, or else the defendant was entitled to a verdict.

This request was right, and asked a proper direction to the jury, except in respect to the rule relating to the weight of the evidence which it asked the judge to apply. It asked the judge to instruct the jury to apply to the evidence the liberal and benign rule which juries are ordinarily instructed to apply in favor of the defendants, to the evidence on criminal trials. It is true that the taking of usury is a criminal offense, and in a civil action involves a forfeiture, but I do not think that courts or juries should lean particularly in favor of the usurer.

A verdict finding usury should doubtless be based upon clear and satisfactory evidence, as it involves by way of penalty the loss of the whole debt, and I do not think that the charitable rule giving to defendants, in favor of life or liberty, the benefit of every reasonable doubt, should be extended to civil actions, in such cases. I think the judge rightly disposed of this question.

Another exception was taken on the ground that the circuit judge allowed the jury, against the objection of the defendants' counsel, to take to their room the bond and mortgage received in evidence at the trial.

In England there are some cases, and perhaps in this country, where new trials have been granted on such grounds, but it is time they were exploded and repudiated. In *Graham on New Trials, p.* 80, it is said: "That in this state the practice is not to allow the juries to have the papers produced in evidence, without the consent of parties." If written documents or papers used in evidence on a trial can only be taken to a jury room upon the consent of parties, it is quite apparent that the practice in such cases stands upon a very uncertain footing. Such consent will, many times, be withheld when the papers and documents would materially aid the jury in their deliberations. It is properly a question to be left unqualifiedly to the discretion of the circuit judge. The judges who preside at *nisi prius* find constant occasions when the written evidence, used on the trial, should be allowed to go to the jury rooms, and I think we should assert and hold the true rule and the law to be, that the judge at the circuit may, in all cases, in his discretion, with or without the consent of the parties, allow the jury to take to their room any written documents or papers received and used in evidence on the trial of a cause. The circuit judge in this case, I think, exercised his discretion properly in allowing the mortgage in question to be taken to the jury room, and this exception should be overruled.

There is one other exception in the case, which I find some difficulty in overruling.

The learned judge, in his charge to the jury, among other things, said: "That if the defendant Harriet Mount knew that the defendant John Mount was receiving money on his own account from the plaintiff, on account of the loan, she would be liable for the money so paid." I do not think this proposition can be sustained. The action is at *common law,*

for money had and received. To support such action, it is necessary to prove that the defendant herself, or her agent, actually received money for the use of the plaintiff. (*Chitty on Cont.* 602.)

The form of the *indebitatus count*, for money had and received, is, that the defendant is indebted to the plaintiff in a certain sum, for money had and received by the defendant for the use of the plaintiff. There is no evidence and no pretense in the case that the defendant Mrs. Mount ever received or had one cent of the money for which this action was brought and the verdict rendered. It, confessedly, never was, or any part of it, in her possession or control, or was applied to her use or benefit. A recovery against her for such money, therefore, can not be had, put or sustained, except upon the ground that it was received by her agent for her use and benefit. There is no other ground upon which she can be held liable for this money, at least in this action.

The proposition in the charge, to which the exception I am considering applies, assumes that Mrs. Mount did not receive the money, and that it was not received for her use and benefit, or by her authority or direction. It is, "if Mrs. Mount knew that John Mount was receiving money on his *own account* from the plaintiff on account of the loan, she would be liable for it." This proposition, it seems to me, is in conflict with the very theory and essential principle upon which the action for money had and received rests. John Mount received this money — he had it in his possession — he received it for his own use — applied it to his own use and benefit.

But the charge in this particular doubtless was made upon the principle, and proceeded upon the assumption, that the action for money had and received would lie for the usurious excess over legal interest whenever a contract was infected with usury.

In this view the charge asserted and, in effect, implied that the contract for the loan of the $1000 to the plaintiff and the two agreements to extend the time of payment of such loan,

would be usurious if Harriet Mount knew that John Mount was receiving money on account of such loan, from the plaintiff—though it was for his own exclusive use and benefit.

The proposition, in the broad and unqualified sense, it seems to me, is opposed to the law of usury as asserted and applied in the case of *Condit* v. *Baldwin*, (21 *N. Y. Rep.* 224, and 21 *Barb.* 185,) and other cases.

That case, so far as it stands upon any principle, which I much doubt, can only stand and be sustained upon the ground that the premium of $25 received in that case by the agent of the plaintiff, upon the loan, was received for the sole use of the agent, and was not received for the use and benefit of the lender or upon her authority or assent.

In the opinion in that case, in this court, my brother Johnson said : "But where the agent of the lender, and the borrower, agree without the lender's knowledge, and in no respect for his benefit or advantage, that such agent shall have a commission out of the moneys loaned, it must, I think, be held to be the agreement of the agent, and he alone, if any one, should be held accountable for the wrong." And in the Court of Appeals, Judge Davies, who gave the opinion of the court in the same case, says : "The agent has taken and received this gratuity or usury and not the principal. To render the transaction usurious as to this plaintiff, we have to establish that she took and received the unlawful interest, and from this fact infer the corrupt intent. Williams took it for alleged services rendered by him. Can it, for a moment, be contended that the plaintiff could have recovered this money of Williams as so much money paid to him for her use ? Clearly not."

He says, further : " Baldwin had an action to recover the excess ; but against whom could he have maintained it ? Certainly not against the plaintiff. She never took or received it. The agent was never authorized to take or receive it. On no principle could the action have been sustained against her."

This is precisely this case. But the action is brought to recover the usurious excess, and is brought against the principal. Judge Davies said such actions could not be maintained against the plaintiff in that case, because she had never received the money or authorized her agent to receive it.

This was the reason why that was not a case of usury — because the lender had not received or agreed to receive any excess over legal interest, and the usurious excess confessedly received by her agent was received for his *own use and benefit,* and not for the use of his principal. In *Fellows* v. *The Commissioners of Oneida,* (36 *Barb.* 655,) which case presented substantially the same facts as that of *Condit* v. *Baldwin,* and was decided on the authority of that case, Judge Bacon, in giving the opinion of the court, says: "The rule, therefore, that when an agent, while strictly pursuing his authority, commits a wrong, he thereby binds his principal, does not apply to a case where the agent, departing from the line of duty, is bargaining on his own account, and securing a benefit for his own private advantage exclusively." That is this case precisely, assuming that John Mount was the agent of his wife, which he and Mrs. Mount distinctly deny.

The only question which remains in this connection is, whether the principle is or is not affected by the knowledge, or want of knowledge, by the lender, that the agent is receiving a bonus or premium upon the loan.

In *Condit* v. *Baldwin* it is mentioned, and some stress is laid upon it in the opinions, that the plaintiff was ignorant of the fact that Williams exacted and received the $25 premium. If this fact of knowledge was essential to the decision, the plaintiff in that case must, it seems to me, be deemed to have had knowledge of the fact of the taking and payment of the premium, for Williams made the contract of loan and advanced the money himself. He was not an agent to procure the loans. He made the loans himself. The contract of loan was a single one, and made by him with the money of his principal in hands.

The agreement to pay the $25 premium was part and parcel of the contract, and it is impossible therefore, it seems to me, to hold that it did not infect and taint it, except upon the single consideration that the premium in question was stipulated for and received by and for the sole benefit and use of the agent, and that the principal actually lent and advanced to the borrower the full sum specified in the security, and in no way received any benefit from the premium or bonus paid her agent.

But this case, it seems to me, stands upon much firmer ground than that of *Condit* v. *Baldwin*, for in this case Mrs. Mount herself actually lent her own money. The application to loan the money was made to her in person, and she agreed to make the loan, and actually advanced the money to the plaintiff and took the security in her own name; and she swore that she was accustomed to do her own business, and that her husband was not her agent to make the loan or do any act in regard to it.

It is quite apparent from the evidence that Mount took advantage of his position and relation, as the husband of Mrs. Mount, to sell his services and influence with her to procure the original loan to the plaintiff, and to extend the same from time to time for the sums of money paid to him by the plaintiff. He performed the office of a sort of broker or intermediate man between the parties to negotiate the loan and the extension, and extorted the money paid him by the plaintiff in consideration of such services. This would not affect the validity of the contract, inasmuch as Mrs. Mount actually advanced the full sum of $1000 of her own money on the loan, and received nothing but legal interest, within the following cases and others: *Dagnall* v. *Wigley*, 11 *East*, 42; *Coster* v. *Dilworth*, 8 *Cowen*, 299; *Barretto* v. *Snowden*, 5 *Wend.* 181; *Crane* v. *Hubbel*, 7 *Paige*, 413. It is the constant practice of brokers and agents to negotiate loans and receive payment by way of commissions or otherwise for their services, and it must be generally well known to lenders

that the broker in such cases is to receive a compensation for his services. The fact of the mere knowledge of the lender, in such cases, that his agent or broker or the common agent or broker of the parties, is paid by the borrower a commision or other compensation, can in no case affect the validity of the contract, except when advantage is taken through such agent by some device to secure more than legal interest to such lender, to go to such agent on the money lent.

The case of *Moagage* v. *Liman*, (1 *Moody & Malkin*, 121,) illustrates this point. In that case an agent had procured a loan of £1000 and retained £100 for his services.

Lord Tenterden said, in his charge to the jury, that if the lender had caused the transaction to pass through the hands of Coats (the broker) in order that he might receive the premium over and above the regular discount, that would be usury, though he retained nothing himself beyond the legal interest.

Referring to that case, my brother Johnson, in *Condit* v. *Baldwin*, (*supra*,) said of it: "To this rule I subscribe. In such a case payment to the agent, at the request and as a condition imposed by the lender himself, is a payment to him." This I think entirely sound. If a lender imposes or makes it a condition of the loan that a bonus or premium shall be paid to his agent, such sum should be deemed paid to the principal, and should affect the validity of the contract and be recoverable, precisely as if made to the lender himself. But nothing of that kind is proved or pretended in this case, and the cause was not submitted to the jury upon any such ground; nor can the verdict, I think, be sustained upon any such theory of the case.

This question comes before us upon exceptions to a particular portion of the charge. The whole charge is not given, and we can not therefore see that this proposition was qualified or explained so that no injury was done by the apparent error.

The proposition in the charge, as it stands, negatives the

idea that the money received by Mount was received for the use and benefit of Mrs. Mount, or was received by any authority, consent, contrivance or connivance on her part, and forbids the jury to render a verdict upon any such theory or assumption.

I can not see how she can be liable for money so received, in a simple action at common law for money had and received.

For this error in the charge therefore, I think there should be a new trial.

But my brethren think differently from me on this single point, for the reason expressed in the opinion of my brother Johnson, and a new trial as against Mrs. Mount must therefore be denied. And we all concur that the complaint should be dismissed as against Mr. Mount; and as he is the more guilty party, and the money received by him for his services was quite extortionate in amount, we think, under the provisions of section 306 of the Code, where several defendants are sued not united in interest and making separate defenses, we have discretion to deny him costs as upon a verdict in his favor, and the complaint as against him should therefore be dismissed without costs ; and it is so ordered.

JOHNSON, J. I concur fully in my brother E. Darwin Smith's opinion in this case, except that portion relating to so much of the charge as instructed the jury, "that if the defendant Harriet Mount knew the defendant John Mount was receiving money on his own account from the plaintiff on account of the loan, she would be liable for the money he paid." I am clearly of the opinion that this part of the charge was correct, in view of the evidence in the case, and of the peculiar character of the transaction. The whole charge is not given in the case, but so much, and such parts only, as are excepted to. The action was brought to recover back the sum of $286, paid as usurious premium upon the loan of $1000, as follows : $136 at the time of making the loan for one year, $100 for extending it one year thereafter,

Porter *v.* Mount.

and $50 for extending it still another year. The evidence on the part of the plaintiff tended to show that John Mount, the husband, made the bargain with the plaintiff for the loan, and for the extensions, for Harriet, the wife, and that she knew the character of the bargains he made with the plaintiff. The usurious premiums were all paid to the husband, though some of them were paid in the house and upon the table, when the wife was present, in and out of the room attending to her household affairs. Harriet, the wife, on the other hand, testified that she never authorized the taking of any usury, and never knew that any had been paid, and never received any. That she made the loan herself, and for lawful interest only. John Mount, the husband, also testified that his wife had no knowledge of the usurious part of the agreement when it was made, and that he never paid her any portion of the usurious premium he received; that she never authorized him to bargain for, or to take usury on account of the loan, and knew nothing of that part of the agreement *until afterwards.* The money loaned was the separate property of the wife. It will be seen, therefore, that it became a question upon the trial whether these extraordinary and unconscionable exactions were usurious in their character as respected the lender, Mrs. Mount, and if they were, whether she would be liable in an action for the recovery back of the money thus paid. It was clearly in reference to this aspect of the case that the charge was made as above stated. This being the only part of the charge set out in the case, the presumption must be that the law was laid down to the jury correctly, as to the agency of the husband and the binding nature of his acts upon the principal, and all other matters pertinent to the case as it was presented by the evidence.

The precise question then would necessarily arise, in case the lender was cognizant of the acts of the person acting in her behalf so as to taint the agreement, as to her, with the usury exacted and paid, whether she would be liable in this action, even though the money did not come to her hands,

but was received by her husband and retained by him for his own benefit with her knowledge. In such a case, it seems to me, there can be no doubt of the legal character of such usurious payments. The jury, of course, found from the evidence that all this was done with her knowledge and consent. That she consented he might take this usurious premium, and also that he might retain it as his own. But it was nevertheless paid on account of the loan, and as part of the bargain by which the loan was secured, and the time extended. It was her bargain, although made by her agent, and all the money paid upon her contract was in contemplation of law paid to her although received by an agent. Her knowledge and sanction of the bargain of the agent made it hers, in all its parts, of which she had knowledge and to which she made no dissent. The transaction is a unit and can not be separated. To hold that the principal was liable for one part and the agent only for another, would necessarily imply that one portion was the act of the agent and not of the principal. This was the case of *Condit* v. *Baldwin,* (21 *N. Y. Rep.* 219. *S. C.* 21 *Barb.* 181.) In. that case it was held that the principal was not liable for the act of the agent, and the contract not tainted as respected her, precisely because the agent acted for his own exclusive benefit and advantage, without any knowledge or assent of his principal whatever, who had never heard of the usurious part of the transaction, had never authorized it, and never received any portion of the unlawful premium, and never knew that any had been paid to the agent. That has been regarded by judges, and the profession generally, I think, as an extreme case, and as extending the exemption of the principal from the legal consequences of the improper, and even unauthorized, acts of agents, in the business they are employed to transact, quite as far as any rule can warrant. That decision, however, in view of the peculiar facts of the case, stands, I think, upon a sound principle. But the facts there, upon the turning point, were just the reverse of the facts in

Porter *v.* Mount.

this case, as found by the jury. Here the principal knew what the agent was doing in her business and with her money, and what the borrower was paying on account of her loan to him. She consented that her husband and agent should receive the money upon the corrupt bargain, and can not shield herself upon the plea that her agent has never paid it to her, but has kept it himself by her consent. Payment to him in such a case is payment to her. It would be exceedingly dangerous, as it seems to me, and lead in practice, to a complete evasion of the statute, to hold a contrary doctrine in a case like this. All corrupt loans would be made through agents, and all the lender would have to do to save himself, would be to agree that the agent might keep for his own benfit whatever exorbitant exaction he might demand and obtain. I think the charge, in this respect, was correct in point of law, and was in strict accordance with the decision in *Condit* v. *Baldwin*.

It follows from this, that a new trial as to the defendant Harriet Mount, should be denied, and the complaint dismissed as against John Mount, with costs of the action.

JAMES C. SMITH, J. concurred.

Judgment accordingly.

[MONROE GENERAL TERM, December 5, 1865. *Johnson, J. C. Smith* and *E. D. Smith,* Justices.]