J. G. SMEDBERG, Administrator, &c., *v.* WHITTLESEY and VAN NOSTRAND.

WHERE a party to an usurious bill or note, gives a new security for it to a holder for value, without notice of the usury, the new security is valid; although the holder could not have recovered on the bill or note.

The possession of a bill or note by an indorser, is presumptive evidence that it was transferred to him on a good consideration before its maturity.

The giving of a new note without objection, by the debtor on an usurious note held

Smedberg v. Whittlesey.

by an indorsee, is of itself an admission that the indorsee is a *bona fide* holder of the old note, without notice of the usury.

In a suit upon a new note so given, the holder may rely upon such admission, in connection with his possession of the old note, to overcome the defence of usury in the latter. And the burthen of proof will be cast upon the defendant, to prove that the holder had notice of the usury, or received the usurious note without a sufficient consideration.

Where a bill states the indorsing of a note by the defendants, payable at a particular place, and the answer admits the indorsement of the note, without any qualification, the defendant cannot prove that the place of payment was inserted after he indorsed it.

The bill stated, that a note was not paid when due, but was duly protested, and notice duly and legally given to the indorser, and as evidence thereof, referred to a notary's certificate annexed. It appeared in proof, that the demand and notice were made and given by another person.—*Held*, that the proof was competent, and the reference to the certificate might be rejected as surplusage.

In a suit to compel A. to transfer stock, on a contract to transfer it if B.'s note were not paid at maturity, B. is a proper party with A.

December 9, 12, 1845 ; February 24, 1846.

THE bill was filed, May 27th, 1844, by Charles G. Smedberg against Friend Whittlesey and James Van Nostrand. The defendants answered, and proofs were taken, after which Mr. Smedberg died. The complainant was appointed his administrator, and revived the suit on the 27th of October, 1845.

The case made by the bill was as follows. C. G. Smedberg in January, 1844, was the holder of two notes of two thousand dollars each, made by one Wilcox and indorsed by Whittlesey, who resided in Connecticut, on which he had taken out an attachment against Whittlesey's property, under the statute relative to proceedings against non-resident debtors, and levied on the stock hereafter mentioned.

In order to procure the discharge of the attachment, two new notes were given on the 30th of January, 1844 ; one for $1297 45, which was not in question in this suit ; and the other for $3000, made by Edwin Wilcox, indorsed by Whittlesey, and payable in May following. To secure the latter note, Whittlesey procured Van Nostrand to give a certificate that he held thirty shares of the stock of the American Exchange Bank, which he thereby agreed to transfer to C. G. Smedberg, on Whittlesey's becoming legally liable to pay that note. The note fell due on the 14th of

May, 1844, was protested on that day for non-payment, and notice of its not being paid, regularly given to the indorser, Whittlesey. Smedberg presented evidence of these facts to Van Nostrand, and called on him to transfer the thirty shares of stock, pursuant to the agreement, which he refused to do. The bill prayed for a transfer of the stock, and for costs.

The answer alleged that the notes for $2000 each, were usurious and void, of which Smedberg had notice, and that he was not a holder of those notes in good faith for value. The defendants insisted, that the note for $3000 was therefore tainted with the original usury and void. The answer averred, also, that the note was not legally demanded of the maker when it was due, the demand not being made at his residence or place of business, and that therefore Whittlesey was not legally charged with the payment of the note. Whittlesey objected, that he was not a proper party to the suit.

Much testimony was taken on the subject of the consideration of the two notes of $2000, and the alleged usury in those notes, which it is unnecessary to state, as the court did not dispose of that question. Such other testimony as is important to an understanding of the points decided, will be found in the opinion of the court.

*J. N. Platt*, for the complainant.

*J. S. Bosworth*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The first ground of defence which I will notice, is that the notes which were given up by the intestate in January, 1844, were usurious, and the note of $3000, for which the stock was a security, is therefore void; the complainant having omitted to prove that the intestate paid value for the former, and that he received them without notice of the usury.

It appears that the intestate was the holder of the notes said to be usurious, in December, 1843, at which time they were past due; and there is no proof how he came by them, or what he

paid for them. They were in his possession, indorsed by the defendant Whittlesey.

The possession by an indorsee of a negotiable promissory note, is presumptive evidence that it was transferred to him on a good consideration and before its maturity. (*Pratt* v. *Adams*, 7 Paige, 615, 629; *Morton* v. *Rogers*, 14 Wend. 580, per Chancellor.) The latter part of the proposition is familiar law. In *Nelson* v. *Corning*, (6 Hill, 336,) Judge Bronson says, where the action is brought by an indorsee, the maker cannot set up any equities between himself and the payee, until he has shown that the holder received it, either without consideration, or after it became due, or with notice of the facts set up as a defence. No such proof is given by the defendants in this case, and in intendment of law, the intestate was a *bonâ fide* holder of the notes without notice of the alleged usury.

On those notes he issued an attachment against Whittlesey, under the statute relative to Absent and Non-Resident Debtors, and seized the stock in question. The consideration for the note of $3000, was the discharge of the attachment proceedings and the original notes. It was made without insisting upon the alleged usury, or indeed averring its existence.

Can Whittlesey now avail himself of that defence?

It is well settled that where the maker of an usurious note or bill, gives a new security for it, to one to whom it has been transferred for a valuable consideration without notice of the usury, the new security is valid, although the indorsee could not have recovered on the note or bill. (*Ellis* v. *Warnes*, Moor 752, s. c. Cro. Jac. 33; *Cuthbart* v. *Haley*, 8 T. R. 390; *Kent* v. *Walton*, 7 Wend. 256.)

It is urged, however, that in order to sustain the new security, the holder must prove that he paid a valuable consideration for the usurious note or bill, and that he is not permitted to rely upon the legal presumption arising from his possession of such note or bill.

The authorities relied upon, were either cases in which the holder of an usurious note or bill, sought to recover notwithstanding the usury, under the exception in the former statute of usury; or those in which it was shown that the true owner of the

note or bill, had been deprived of it by fraud, larceny, or the like. In the former class, the defendant by proving the usury, had brought himself within the provisions of the statute, and shown the security to be void, and the plaintiff was thereupon put to bring himself within the exception. But he was not required to go a step beyond the language of the exception, because after proving payment of value, he might avail himself of the legal presumption that the note was transferred to him before it became due. In the other class of cases, a better title being shown in the original holder, the plaintiff rests solely upon the exception made by the law, in favor of commercial paper, and must prove the existence of the exception. In several of the cases, where the new security has been enforced in favor of an indorsee, who received it on relinquishing the usurious note, it appeared that he had taken the latter upon a valuable consideration paid. But I find no decision which requires such proof to be made. On the contrary, in the first reported case where the new security in the hands of a third person was upheld, *Ellis* v. *Warnes*, there was nothing shown beyond the existence of a debt in favor of the plaintiff, against the usurer, and it did not appear that any obligation was given up or debt cancelled, on receiving the usurious security. In *Cuthbart* v. *Haley*, the plaintiffs on receiving the usurious notes from the payee, for whom they were bankers, credited the amount to him in account. It did not appear that he had drawn out any part of it, but the stress was laid upon the fact that the plaintiffs received them without fraud, and without notice of the usury. And see *Powell* v. *Waters*, (8 Cowen, 696, per Colden Senator.)

I have stated the presumption which the law derives, from the possession of a bill or note, that the holder received it in good faith, and before it became due. I think that when a debtor on an usurious note, which has been transferred to a stranger, gives a new note to such stranger, without raising any objection to the validity of the former, it is of itself an admission that he is a *bona fide* holder of the same, without notice of the usury. And in my opinion a plaintiff may rely upon the legal presumption, arising from the possession of the usurious note, and upon such admission derived from the giving of a new security, to recover upon

Smedberg v. Whittlesey.

the latter, notwithstanding the usury in the former. And if there be any circumstance of notice, or of the want of a good consideration, in respect of such first note, it is incumbent on the party relying upon the defence of usury in such a case, to establish it by proof.

In this suit there is the further consideration of withdrawing the attachment, which of itself forms an important point for sustaining the new note. (*Stewart* v. *Eden*, 2 Caines R. 150.)

On both grounds combined, I am clear that the defence of usury cannot be set up to the note of $3000, and it is unnecessary for me to look into the testimony bearing upon that point.

The next question is upon the alteration of the note, after Whittlesey indorsed it, so as to make it payable at the Fulton Bank.

It is sufficient to say of this, that it is not set up in the answers. Moreover the bill states expressly, that the note was payable at the Fulton Bank, and a copy of it is attached to the bill, by which it appears to be payable there. Whittlesey admits in his answer, that he indorsed the note, and his silence as to its terms, is an admission that it was payable as stated in the bill.

Next it is objected that the protest of the note, and notice of its non-payment, are not proved as they are alleged in the bill.

The complainants statement is, that the note fell due on the 14th day of May, 1844, when it was not paid, and it was duly and legally protested for non-payment, and notice of such non-payment duly and legally given to Whittlesey, the indorser. The bill then refers as evidence of this, to the notarial certificate of Mr. Franklin, which is set forth at large, and which states the presentment of the note at the Fulton Bank on the 14th of May, that payment was refused, the note was thereupon protested, and on the 15th of May, notice of its protest was mailed to Whittlesey, directed to his place of residence.

It turns out in proof, that Mr. Franklin had nothing to do with the demand, protest or notice, and knew nothing of either; but the same were performed by Foley, a clerk of a former notary, who used Mr. Franklin's name and seal furnished to him in blank. Foley proves a regular demand of the note, its non-payment, and the mailing of the notice to Whittlesey. The point turns on

the reference in the bill to Franklin's certificate, and it is said the complainant can prove no demand, protest or notice, except those stated in the certificate.

It is evident that the defendants have stumbled upon this variance, if any it be, because there is no issue upon it in the answer; and a distinct ground is there set up, viz. that the note ought to have been demanded at the maker's residence or place of business, and therefore the defendant denies, that it was legally protested, and notice duly and legally given so as to charge him. The only effect of the variance, under such circumstances, would be to have the cause stand over for an amendment of the bill.

I do not however, deem it a material variance. The substantial allegation is, that the note was presented for payment at the proper time and place, and notice of its non-payment given in proper form, and season to Whittlesey. It was quite immaterial, whether this were done by Franklin or by Foley. If the whole allegation, commencing with the reference to the notarial certificate, were stricken out, the charge in the bill would still be sufficient, and the proof would sustain the charge. That allegation may therefore be rejected as surplusage, especially as no issue is made upon it, and it has in no respect misled the defendants.

The complainant has proved, that Whittlesey became legally liable to pay the note of $3000, and he is entitled to have the stock transferred to him by Mr. Van Nostrand, with costs of the suit.

Whittlesey was a proper party to the suit, and his objection on that score is not well founded.

Decree accordingly.