## PALMER *v.* CALL.

(*Circuit Court, D. Iowa.* ——, 1881.)

**1. USURY—AGENCY.**

If an agent, in good faith, makes a loan for another and without the knowledge or authority of his principal, and for the agent's own benefit exacts more than legal interest, the loan is not thereby rendered usurious.

**2. SAME—RENEWAL—BONA FIDE ASSIGNEE.**

Where an usurious obligation is passed for value to an innocent purchaser without notice of the usury, who afterwards takes a new and substitute security for the debt, there being no taint of usury in the second transaction, the plea of usury to the substituted obligation cannot be sustained.

**3. CASE STATED.**

A. placed $10,000 in B.'s hands to loan. B. made the loan to the defendant, giving him $8,000, retaining $2,000 as commission, and receiving in his own name defendant's note for $10,000, with semi-annual interest notes of $500 each. B. retained custody of the notes, but recognized them as the property of A., who received the interest, but knew nothing of the usury, and gave B. no authority to retain any bonus out of the sum loaned, or take more than legal interest therefor. The plaintiff purchased the notes in good faith at their face value without knowledge of the usury in the original loan, and afterwards, through B. & Co., made a new contract with the defendant by which he advanced him $1,000, surrendered the note, and received from him the note now in suit for $11,000. Plaintiff did not know that B. & Co. retained $500 of the $1,000 he advanced as commission for procuring the reloan. The defence of usury being set up in suit to foreclose the mortgage given to secure the note, *held:*

(1) That as neither A. nor the plaintiff had any knowledge of the usury, and derived no benefit from it, the plea of usury must be overruled.

(2) That A. was to be regarded as the lender of the money, although B. failed to disclose his principal and took the notes in his own name.

(3) That plaintiff could still recover though B. be regarded as the lender, since the substitution of the new security purged the loan of the taint of usury in his hands as an innocent assignee.

(4) That the statutes of Iowa relative to usury have not modified the foregoing rules of law.

In Equity.

This is a suit to foreclose a mortgage. The only defence usury. The note secured by the mortgage was for the sum

of $11,000, executed by the defendant to the complainant at Emmetsburgh, Iowa, on the first day of November, 1875, payable, with interest at 10 per cent. semi-annually, on the eighteenth day of November, 1880, with a stipulation that if default should be made in the payment of interest, the whole should, at the election of the holder, become due, etc.  It appears that Mrs. Maggie P. Davison, of Cook county, Illinois, placed in the hands of one A. C. Burnham, also living in that state, the sum of $10,000, authorizing him to loan the same for her on real estate security.  Said Burnham was a member of the firm of Burnham, Ormsby & Co., bankers, of Emmetsburgh, Iowa.  Asa C. Call, the defendant, had applied to that firm to obtain a loan for him.  Shortly after the application was made, Call met A. C. Burnham in Iowa, and they entered upon a negotiation for the loan. The result was that Call gave his note to Burnham for $10,000, with semi-annual interest notes of $500 each, and received through the house of Burnham, Ormsby & Co. the sum of $8,000, that firm retaining $2,000 as commissions out of the $10,000.  The money loaned belonged to Mrs. Davison, but that fact was not disclosed to Mr. Call, and the notes were taken in the name of A. C. Burnham.  The notes remained in the custody of A. C. Burnham, subject to the control of Mrs. Davison, and were recognized by Burnham as her property.  She received the interest, and was wholly ignorant of the fact that Mr. Call received any less sum than $10,000.  She gave no authority to Burnham to loan the money at a greater rate of interest than 10 per cent. per annum, or to take any bonus out of the sum loaned.  She received no benefit from the usury, and had no knowledge whatever of it.

The plaintiff, Henry H. Palmer, a capitalist residing in New Jersey, purchased the said $10,000 note, with five coupon notes attached, from A. C. Burnham, who indorsed it to him in September, 1873, paying for the same the full face value of $10,000 in cash.  The interest had been paid at maturity up to the time of the purchase, and the plaintiff had no notice of the usury in the original loan on which the

notes were given. The plaintiff did all the business in connection with the notes and mortgage through the house of Burnham, Ormsby & Co. He never saw the defendant, nor did any business with him in person. The plaintiff placed the notes in the hands of Burnham, Ormsby & Co. for collection of interest, and reloan to Mr. Call. The interest notes were paid at maturity to the plaintiff until November, 1875, when, one of the coupon notes for $500 being due, the defendant, at the instance and request of Burnham, Ormsby & Co., entered into a new contract for the extension of the loan, by which he gave the plaintiff the said note for $11,000. The plaintiff advanced and paid the sum of $1,000 in cash, and surrendered the $10,000 note to the defendant. It seems that Burnham, Ormsby & Co. applied $500 of the cash payment to the payment of the coupon note then due, and, without knowledge of the plaintiff, retained $500 as a bonus for effecting the new loan. The plaintiff did not authorize the retention of the $500 bonus by Burnham, Ormsby & Co., received no benefit from it, and, in fact, had no notice of it when he received the $11,000 note and mortgage.

*O'Connel & Springer* and *Crawford & Soper.* for plaintiff.

*George E. Clarke, Hubbard & Clarke,* and *Wright, Gatch & Wright,* for defendant.

LOVE, D. J. It is well settled that to make a loan usurious there must be an intent on the part of the lender to take more than the legal rate of interest. Tyler on Usury, 103; *Condit* v. *Baldwin,* 21 N. Y. 219; *Loyd* v. *Scott,* 4 Pet. 205; *U. S. Bank* v. *Waggener,* 9 Pet. 309; *Jones* v. *Berryhill,* 25 Iowa, 289.

Doubtless, in general, the intent of an agent acting within the scope of his authority may be imputed to the principal. But it is settled beyond question that if any agent in good faith makes a loan for another, and without the knowledge or authority of his principal, and for the agent's own benefit exacts more than legal interest, the loan is not thereby rendered usurious. In such case the law does not impute the knowledge and the intent of the agent to the principal. This doctrine is supported by numerous authorities both in

England and this country. Tyler on Usury, 156–172; *Dagnel* v. *Wigley*, 11 East, 43; *Solartee* v. *Melville*, 7 Barn. & Cress. 427; *Coster* v. *Dilworth*, 8 Cow. 299; *Condit* v. *Baldwin*, 21 N. Y. 219; *Smith* v. *Marvin*, 27 N. Y. 137; *Bell* v. *Day*, 32 N. Y. 165; *Baxter* v. *Buck*, 10 Vt. 548; *Muir* v. *Newark Ins. Co.* 16 N. J. Eq. 537; *Canover* v. *Van Mater*, 18 N. J. Eq. 486; *Rogers* v. *Buckingham*, 33 Conn. 81; *Hopkins* v. *Baker*, 2 P. H. (Va.) 110; *Gokey* v. *Knapp*, 44 Iowa, 32; *Myllis* v. *Ault*, 45 Iowa, 46; the result summed up in 17 Alb. Law Jour. 116; *Barret* v. *Snowden*, 5 Wend. 181.

I have the greatest confidence in the correctness and stability of this rule from the fact that it rests upon solid foundations of reason and justice. The lender employs an agent to loan his money. He gives the agent no authority to violate the law. He has no knowledge of the fact that usurious interest is extorted. He has no intent to receive, and does not receive, more than the law allows. He derives no benefit from the illegal transaction. But the agent and borrower, without the knowledge, consent, or authority of the lender, enters into an illegal contract for the payment of excessive interest. The borrower and agent are the guilty parties. They knowingly violate the law. They are *particeps criminis*, though it may be in unequal degrees. They knowingly put the lender's money in jeopardy without the least pecuniary advantage to him. It is the lender who is prejudiced and injured by such a transaction. Would it not be most unjust to inflict the pecuniary loss upon the lender, who is without fault and free from any illegal intention, in favor of a party who has knowingly and wilfully participated in the violation of the law? Would it be consistent with sound morality so to do? What right has the borrower to assume or to believe that the lender's agent is authorized by his principal to violate the law by the taking of usurious interest? The lender's agent is either a special or a general agent. If he is specially empowered to negotiate the particular loan and no other, it is the legal duty of the borrower to look to the special authority, and the principal is not bound beyond the special

authority. If he is a general loan agent, the limitation is that he must keep within the usual and ordinary scope of the business committed to him. The borrower must determine the extent of the authority by considering what is the usual and ordinary course of that business. Is it within the usual and ordinary course for an agent to take excessive interest in violation of the law? Such a practice is *extraordinary*. It is *without* the usual course of business. The natural and proper inference for the borrower to draw from the fact of the agent's proposing to take illegal interest, would be that in so doing he would be acting without the authority of his principal. It may be said that the principal is responsible for the frauds of his agent in the course of the business committed to him, even though the principal should be ignorant of the fraudulent acts or should expressly prohibit them. Very true; but in this case there are two innocent parties— the principal and the party defrauded. One of the two must needs suffer from the fraudulent acts of the agent; and it is the dictate of reason and justice that where one or the other of these innocent parties must suffer, the loss should fall upon him who put it in the power of the agent to commit the fraud, rather than him who had no lot nor part in choosing the agent, or placing him in a position to do the mischief. But in the case of usury contracted for through an agent the borrower is not innocent. He participates knowingly in the violation of the law. He has no merit to plead in his defence; while the lender, in the absence of authority given by him, or knowledge of the violation of the law, is wholly innocent and entirely free from moral guilt. Indeed, it smacks strongly of fraud in the borrower to enter into a contract with the lender's agent to pay usurious interest, without any inquiry whatever into the authority of the agent to make an unlawful contract, which the borrower knows cannot be enforced; for in this way the borrower, in connivance with the agent, gets the lender's money with the intent, demonstrated by his subsequent plea of usury, to avoid the fulfilment of his contract. Now if the principle thus stated, which is so just in itself and so firmly supported by author-

ity, be sound law, it is decisive of the present case; for it is evident that neither Mrs. Davison nor the plaintiff had any knowledge whatever of the retention by Burnham, Ormsby & Co. of the respective bonuses of $2,000 and $500. They did not authorize the usury. They received no benefit from it. They paid the full sums for which they respectively received the defendant's notes. If, therefore, it be granted as a fact that A. C. Burnham was Mrs. Davison's agent in making the original loan, and that Burnham, Ormsby & Co. were the plaintiff's agents in negotiating the second loan, it would make no difference in the decision of the question in this case. The plea of usury must still be overruled. I cannot assent to the proposition of defendant's counsel that in the original transaction A. C. Burnham was the lender of the money, because he failed to disclose his principal, and took the notes in his own name. The money belonged to Mrs. Davison. A. C. Burnham was her agent in making the loan of it. They both treated the notes as the property of Mrs. Davison, and she received the interest upon them. A. C. Burnham had in fact no real interest in the loan, except as trustee for Mrs. Davison. He would have lost nothing if a plea of usury had been sustained. The penalties would have fallen upon Mrs. Davison; and it is, therefore, her intentions and her acts, not the acts and intentions of A. C. Burnham, that are to be considered in determining whether or not the penalties of usury shall be inflicted. The act of an agent in taking notes upon a loan of his principal's money in his own name does not make the agent the lender. But even if we grant the proposition that A. C. Burnham was in fact the lender, it will not avail the defendant in this case; for it is a legal proposition well settled in our jurisprudence by the most respectable authorities, that where an usurious obligation passed for value to an innocent purchaser without notice of the usury, and where the innocent assignee takes a new and substitute security for the debt, there being no taint of usury in the second transaction, the plea of usury to the substituted obligation cannot be sustained. So long as the usurious contract remains in the hands of the original

party to it, no change in the form of the security will have any effect to purge it of the taint of usury; but where it has passed for value into the hands of an innocent assignee the rule is different. *Ellis* v. *Warner*, ——, 752; *Cuthbert* v. *Haley*, 8 Tenn. 890; *Powell* v. *Waters*, 8 Cow. 669; *Kent* v. *Walton*, 7 Wend. 257; *Dix* v. *Van Weyck*, 2 Hill, (N. Y.) 522; *Smedburg* v. *Simpson*, 2 Sandf. 87; *Smedburg* v. *Whittlesey*, 3 Sand. Ch. 323; *Smalleys* v. *Dougherty*, 3 Bosw. 66; *Houghton* v. *Payne*, 26 Conn. 396; *Brown* v. *Waters*, 2 Ch. Cas. 209; *Bearce* v. *Barston*, 9 Mass. 44; *Campbell* v. *McHarg*, 9 Iowa, 357; *Wendlebone* v. *Parks*, 18 Iowa, 544.

It is needless to say that the present case is clearly within this principle. The plaintiff was an innocent purchaser of the original notes for value. He not only took a new and substituted security, but the new obligation was founded upon additional considerations—the extension of time and the advance of a further sum of money. There was no usury in the second loan which could, as we have shown, affect him. The argument of counsel that the true construction of sections 2079 and 2081 of the Codes is repugnant to the principle that a new and substituted security in the hands of an innocent assignee avoids the usury,—is to my mind plausible, but inconclusive. These provisions have not yet been construed as applicable to such a security, and I think it is quite unnecessary so to construe them. The provision of section 2081 is that nothing in the statute shall be construed—

" To prevent the proper assignee in good faith and without notice of any usurious contract from recovering against the usurer the full amount of the consideration paid by him for such contract, less the amount of the principal money."

It seems to me that this provision was merely intended to give the assignee without notice a remedy where he had none before; that is, where he stood upon the original usurious contract without any new security. In most cases we may assume that the debtor would not execute to the innocent assignee a new security for the usurious debt, and in all such cases the innocent holder could recover from the debtor only

the "principal money." The statute comes to his relief by giving him a right to recover against the usurer the full amount of the consideration paid by him for such contract, less the amount of the principal money. It is a wholly different case where the debtor himself gives to the innocent assignee, who pays full value and takes no usury, a new and substituted obligation, especially where such obligation is founded upon some new and sufficient consideration. In this case the assignee would have a sufficient remedy against the debtor upon the new contract by the principle of the common law to which I have adverted, and therefore the provision of the statute would be inapplicable to his case and unnecessary to his protection.

As to the words of the section relied upon by counsel to support the construction that "no person shall directly or indirectly receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan of money" than 10 per cent., they are sufficiently answered by the fact that the innocent assignee does not receive more than 10 per cent. on the sum by him advanced. If he does receive more his new contract in its turn becomes usurious, and subject to the penalties of the statute. It is my opinion that it was not the purpose of the legislature to make our statute of usury apply at all to negotiable bills and notes in the hands of the *bona fide* holder. It would certainly be a most serious obstruction to the free circulation of commercial paper to subject it to the law of usury. Can it be that our legislature intended that every one in money transactions before receiving a bill or note under-due, should stop to inquire whether or not it has upon it the taint of usury? I think not. It has long been the settled law that where a statute by its terms makes a note or bill absolutely void, the instrument is invalid in the hands of a *bona fide* holder for value. But where a statute declares a contract illegal, but only voidable, a negotiable note or bill founded upon such voidable contract is good in the hands of a *bona fide* holder. This doctrine has been applied by the courts to statutes of usury as well as other penal statutes. Now, our statute does

not make an usurious contract void; indeed, such a contract is only voidable as to the excess of interest. Did our legislature intend in this respect to overturn one of the great principles governing commercial paper in this and other countries? It is noticeable that the legislature does not, in the sections just referred to, use terms appropriate to commercial paper. The language is that the proper "assignee," not indorsee, shall be entitled to the remedy over against the usurer.

In strict legal parlance we do not use the term "assignee" when we mean to designate the indorsees of bills and notes. I am therefore inclined to think that the legislature, in using the term "assignee," did not mean to provide for innocent indorsees of mercantile paper who were already amply protected by the law merchant, but for that large class of assignees who, in the absence of such a provision, would step into the shoes of their assignors with just the same rights, remedies, and equities to which their assignors are entitled, and none other.

Judgment for the complainant.