Davis, P. J.
The claimant Mathias Plum, who is the respondent on this appeal, held two mortgages on separate parcels of land sold in the partition suit, one of which was executed by John B. and Maria H. Lugar to said Plum to secure the payment of $5,000, and the other by the appellants William G. and Ella L. Mulock also to secure $5,000. Both of these mortgages were dated,the 17th of Juné, 1885, and were given to secure the payment of moneys loaned by Plum to the several mortgagors at or about that time with interest.
The mortgagors resisted the payment of the whole of the amount of said mortgages out of the surplus moneys in court on the ground of usury, claiming in substance that under the laws of the state of New Jersey, where the loans were made and the mortgages made payable, the claimant was entitled to receive no more upon his mortgages than the sum actually loaned, -without interest or costs of suit, after deducting the alleged usurious premium or interest.
The statute of New Jersey, as was proved on the hearing before the referee under which the claim of the mortgagors was made, is as follows:
“ Section 1. That no person or corporation shall, upon any contract, take directly or indirectly for loan of any money, wares, merchandise, goods or chattels above the value of six dollars, for the forbearance of $100 for a year, and after that rate for a greater or less sum, or for a longer or shorter time.
“Section 2. In all cases of suits at law or in equity to enforce any note, bill, bond, mortgage, contract, covenant, conveyance or assurance, which shall be hereafter made for the payment or delivery of any money, wares, merchandise, goods or chattels lent, and on which a higher rate of *524 interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or cost of suit, may be recovered, and no more; and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only.”
The referee found that there was no usurious agreement and that the claimant was entitled to receive out of the surplus moneys the full amount of the mortgages, with interest. Due exceptions were taken to the report of the referee and to several of his findings of fact and refusals to find, as requested, and the special term having overruled such exceptions and confirmed the report, the mortgagors have taken this appeal.
The. facts of the case, as appears from the evidence before the referee, are substantially as follows: On or about the 28th of April, 1885, an application was made by Mrs. Mulock, one of the mortgagors, on behalf of herself and of Mrs. Lugar, to the firm of Coult & Howell, who were lawyers practicing at Newark, in the state of New Jersey, to procure for them two loans of $5,000, each to be secured by their. respective bonds and mortgages; and an oral arrangement seems to have been made that the mortgagors should pay Coult & Howell $1,500 for procuring the loan, and services and expenses attending the same. Subsequently the mortgagors executed and delivered to Coult & Howell an agreement in writing in the words and figures following:
We hereby agree to accept a loan of $10,000, on our share in the property willed by John Gilbert to our mother, Maria Mulock ($5,000 to each), agreeing also to pay Coult & Howell $1,500 to pay expenses, etc., therefor. The loan is to be ready by the 13th inst. Dated June 5, 1885.
Coult & Howell, acting under this arrangement, applied to Plum the mortgagee to make the loans of $5,000 each, and it was agreed between them and Plum, as a condition of making the loans, that the same should be secured by the two bonds and mortgages for that sum and six per cent interest, and that he should receive one-half of the $1,500, less the expenses of Coult & Howell, for making this loan, which arrangement was afterwards consummated by the execution of the mortgages'to Plum and.the delivery by him to Coult & Howell of two checks for $5,000 each, payable to the mortgagors respectively, who endorsed the same to Coult & Howell, by whom the money was obtained from bank, and $1,500 deducted therefrom by them, from which again $110 were deducted for the expenses of making *525 searches and travelling to and from New York; and of the residue $1,390, one-half, to wit., $695," was paid to Plum the mortgagee as the bonus for making the loan. The referee found that Plum knew of the agreement in writing between the mortgagors and Coult & Howell, and “that in pursuance thereof the said Plum did loan the said $10,000 to said defendants.” And he found also “that it was agreed by said Plum with Coult & Howell, or one of them, that he would loan $10,000 on the bonds and mortgages to defendants in two sums of $5,000, and that the said Coult & Howell were to receive $1,500 therefor from said defendants, out of which they would pay the expenses of the loan and then divide the balance with Plum, and that in pursuance thereof they did pay Plum $695.”
There was a conflict of evidence whether the mortgagors knew of the arrangements made with Plum by Coult & Howell before the mortgage was made and the money received. The referee found that they did not have knowledge of the fact of the arrangement. But this finding was against the clear weight of evidence, for it was distinctly testified by Mrs. Mulock that Coult said to her “ that he would get the money for me from Mr. Plum. Mr. Plum at the time would not let us have it as quick as we wanted it without selling out some securities or bonds, or something he called them ; he would not be willing to do that unless he could make something out of it; that is about all there is to it. Q. Was anything said as to the amount to be charged ? A. Yes, $750. Q. To be paid by. whom ? A. To be paid by Mr. Lugar and I apiece; Mr. Lugar was to pay $750 and I was to pay $750; * * * he said that Mr. Plum on account of that would have to sell out his securities or something or other, and he would let us have the money immediately; he would be willing to do that provided he was paid that price for it. Q. What price ? A. $750 a piece. Q. You mean Mr. Plum was to pay that price for it ? A. Mr. Plum was to be paid that price for it; * * * Q. Do you know whether this interview was before or after the talking over of the contracts signed by you? A. It was before.”
William Gr. Mulock testified that Coult said he could get the money if we would pay for it; that he had a gentleman by the name of Plum that would advance the money if we would pay $750. “Q. And you agreed to that. A. Yes, sir.”
And John B. Lugar also testified as follows : “Q. Were you present when it (the agreement) was made ? A. Yes, sir. Q. With whom was it made ? A. With me and Mr. Coult. Q. State what occurred in that conversation ? A. I objected at the time and told Mr. Coult I thought it was *526 a very large price to pay. Q. What was a large price to pay? A. $1,500 for the two mortgages of $5,000 each; he said his chent would not dispose of bonds and securities to make a loan unless he was well paid for it. Q. Did he mention the name of the client ? A. I don’t think he did. Q. Who was present at that time ? A. Mrs. Mulock, myself and Mr. Coult. Q. Was the name of Mr. Plum mentioned in any conversation you ever had with Coult and Howell ? A. I wouldn’t be positive; I understood that Mr. Plum was the party; that whether I derived it from Mrs. Mulock or Mr. Coult or Mr. Howell I would not be sure. ”
This testimony was contradicted by Mr. Coult, but not with positiveness. He was asked: “Q. Did you ever mention Mr. Plum’s name to any of these parties do you think —do you remember on that point whether you ever mentioned the name of Mr. Plum to any of these parties ? A. Not to my recollection; his name might possibly have been mentioned at the time when they closed the transaction. Q. But not until then ? A. I do not think so; I am quite positive.” He also stated that he had no conversation with any of the parties but Mrs. Mulock. The testimony on this question was substantially as three witnesses to one, and a finding that it was known to the mortgagors of whom the loan was to be obtained certainly would have been better supported by testimony than the contrary finding. The referee erred, we think, in not so finding, and the court below should have sustained the exception to his refusal so to find.
But in the view we take of this case this question is not a very material one. Coult & Howell were the agents of the mortgagors. They were employed by them to procure a loan under an agreement which provided that they should be paid $1,500 “to pay expenses, etc.” Their employment was to procure a loan and the “etc.” was to include the cost, whatever it might be, of procuring such loan. They made known to Plum the fact of their employment and offered him as a bonus half of the $1,500, less certain actual expenses which they might incur. Plum knew that they were acting as agents of the borrowers for the purpose of procuring a loan, and he must be held to have known that what the authorized agent does in the business of his principal is done by the principal. His agreement as to the terms of the loan was with the agents it is true, but it was an agreement to make the loan to the borrowers and not to Coult & Howell and to be paid a bonus as it turned out of $695 for making such loan to the borrowers. To such a transaction the law against usury clearly attaches for it is a necessary consequence that the bonus paid to the lender by the agent for the loan to the borrowers is in legal effect *527 paid by the principal as a bonus or excessive interest for the use of the money beyond the six per cent reserved in the mortgages. None of the cases go so far as to uphold such a transaction as this, although some of them, it must be conceded go very far to overthrow the statute against usury. The cases that hold that the exaction from the borrower by the agent of the lender of a bonus for his own benefit unbeknown to the lender, and in which the latter does not participate is not usury, have no application to this case. Condit v. Baldwin, 21 N. Y., 219; Bell v. Day, 32 id., 165.
In Guggenheimer v. Geiszler (81 N. Y., 293) there was no agreement or contract for a usurious bonus, but the attorney wrongfully withheld $150 out of the loan for his own personal benefit, which the court held could have been recovered from the attorney by the borrower or deducted from the- amount recoverable in the action by the lender.
In the case of Madison University v. White (25 Hun, 490) a third party had paid the lender a sum of money to induce him to make the loan, but the borrower had no connection with the transaction whatever; and there was no illegal or corrupt agreement between the borrower and the lender either in fact or in law.
In Estevez v. Purdy (66 N. Y., 446) the agent of the lender extorted a bonus from the borrower on the false pretence that it was for the lender when in fact it was wholly for himself and the lender had no knowledge that it was received and had not authorized it to be taken.
The distinction between these cases and the one at bar is substantially that in them the lender received nothing from the borrower as a bonus for the loan above legal interest. In this he received by express agreement between himself and the agents of the borrower a sum of money which his principal had paid into the agent’s hands for the express purpose in part of procuring the loan. The principals, the borrowers authorized their agent in legal effect to pay whatever bonus was necessary in order to get the loan, and the agent under that authority and for the purpose of getting the loan for the principals had paid a large excess beyond legal interest to obtain the loan.
It is no answer to say that if the loan had been in fact obtained without any bonus, the agents could have kept the whole amomit thus paid into their hands. Whether they could or could not have done so without affecting the validity of the loan is not a question in this case, for the fact here is that they paid the sum of $695 which they were authorized by their principals to use for that purpose, if necessary, as a bonus to secure the loan to a party who made the loan on the condition that that bonus should be paid. He *528 knew that a bonus-in excess of legal interest was to be paid, and he received it as such, knowing that it was part of the sum to be paid to the agents of the borrowers for procuring the loan. The legal consequences of that knowledge attach to him precisely as though he had made his contract with the parties themselves. To hold that this is not within the statute against usury is virtually to abrogate the statute.
The case of Wheaton v. Voorhis, much relied on by the respondents seems to have turned upon the fact as stated 0by the learned judge that “the evidence seems to show beyond dispute, that at the time of agreeing to make the loan, the plaintiff was not in any manner influenced in the making thereof by the promise of Willett to divide any commission which he might make on the loan. At the" |ime, the plaintiff had no knowledge what commission Wnlett was to receive from Voorhis, or whether he was to receive any commission, and his desire seems to have been to invest his money on some good security, at a legal rate of interest.” In this case, as already seen, it distinctly appears that the lender of the money knew of the bonus, and was influenced to make the loan by the promise to divide the bonus or commission, and the loan was expressly made on the condition that he should receive half the sum as a bonus for making the same.
The result is, that the order should be reversed and an order entered, directing that the amount to be paid upon the mortgage shall be ascertained as provided for by the statute of New Jersey, above cited, so that the mortgagee will receive back the money actually loaned after deducting the usurious bonus and without interest.
In the appellant’s points, it is asserted that the borrowers offered to allow that sum to be paid out of the surplus with simple interest. If that be so, the costs of the proceedings below, should also be recovered by them.
Daniels and Brady, JJ., concur.